**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-4946**

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

      v.

GARY DELEON WHITE,

                Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. James R. Spencer, Chief District Judge. (3:07-cr-00083-JRS)

Submitted: December 22, 2008      Decided: January 29, 2009

Before WILKINSON, MOTZ, and SHEDD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Michael S. Nachmanoff, Federal Public Defender, Mary E. Maguire, Frances H. Pratt, Assistant Federal Public Defenders, Richmond, Virginia, for Appellant. Chuck Rosenberg, United States Attorney, Richard D. Cooke, Sara E. Chase, Assistant United States Attorneys, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Gary Deleon White appeals his convictions on four offenses stemming from a traffic stop of White on federal property. On appeal, White asserts the district court abused its discretion in denying his motion to present expert witness testimony pertaining to the reliability of an eyewitness identification and in denying his proposed jury instructions. For the reasons discussed below, we reject White's contentions and affirm his convictions.

In the early morning hours of December 16, 2006, Fort Lee Police Officer Troy Catterton noticed a vehicle traveling without a functioning license plate light.[1] Catterton stopped the vehicle, a gray Dodge Intrepid, and shined his high beam headlights into the vehicle. Catterton approached the driver's side of the vehicle, leaning toward the driver's window. The driver, whom Catterton later identified as White, admitted he did not have either his license or vehicle registration card.

The traffic stop ended after the radio on Catterton's shoulder alerted, causing the driver to speed away and later crash his vehicle.[2] Catterton later learned the vehicle had been

---

[1] Our rendition of the facts is taken from trial testimony.

[2] The entire traffic stop lasted between eight and ten minutes, during which time Catterton was approximately one and
(Continued)

reported stolen in Chesterfield County, and that an arrest warrant had been issued for Gary White in connection with the theft. At Catterton's request, the Chesterfield Police Department sent a copy of its file photo of Gary White to Catterton, who, upon seeing the photo, "knew with 100% certainty" that White was the driver of the vehicle. Catterton viewed only this photo. Three weeks later, a warrant for White's arrest was issued.

On February 12, 2007, Catterton initiated another traffic stop of another vehicle, and upon approaching the vehicle, recognized White was the driver. After White confirmed his identity, Catterton directed White to exit the vehicle and placed him under arrest.

A federal grand jury indicted White on the following offenses assimilated pursuant to 18 U.S.C. § 13 (2006): eluding a police officer, assimilating Va. Code Ann. § 46.2-817(B), (C) (2005) ("Count One"); illegal operation of a motor vehicle on a highway after revocation of license, first offense, assimilating Va. Code Ann. § 46.2-357 (2005) ("Count Three"); reckless driving, assimilating Va. Code Ann. § 46.2-852 (2005) ("Count Four"); and operating a motor vehicle on a highway after being

one-half to two feet from the driver, and was focused on the driver's face.

found a habitual offender and having license revoked, second offense, assimilating Va. Code Ann. § 46.2-357(B)(3) (2005) ("Count Seven"). The grand jury also indicted White on two charges assimilated pursuant to 32 C.F.R. § 634.25(f) (2008): operating a vehicle with a defective license plate light, assimilating Va. Code Ann. § 46.2-1013 (2005) ("Count Five"); and operating a vehicle with a defective headlight, assimilating Va. Code Ann. § 46.2-1011 (2005) ("Count Six"). Finally, the grand jury indicted White on one count of taking, with intent to steal, property valued in excess of $1000, in violation of 18 U.S.C. § 661 (2006) ("Count Two"). The grand jury charged White with committing these offenses within the special territorial jurisdiction of the United States.

Prior to trial, White filed a motion to suppress Catterton's identification, which the district court denied. White next moved the court to allow expert witness testimony regarding eyewitness identifications. The court concluded it must first conduct a Daubert[3] hearing to determine whether such testimony was appropriate.

At the Daubert hearing, White presented the testimony of Brian Cutler, Ph.D. Cutler explained that he would testify to four factors that might have impacted Catterton's

_____

[3] Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).

4

identification of White as the driver from the December 16 traffic stop. Specifically, Cutler averred that cross-race recognition,[4] the mug shot recognition effect, the confidence and accuracy correlation, and the nature of Catterton's initial identification of White might all have impacted the identification.[5] Cutler then discussed the research supporting these factors and their general acceptability in the scientific community.

The district court denied White's <u>Daubert</u> motion, concluding that while Cutler's proffered testimony satisfied the first prong of <u>Daubert</u> in that it qualified as "scientific knowledge," it failed on the second <u>Daubert</u> prong — that it would assist the trier of fact in understanding or determining a fact in issue.

At White's trial, the Government presented Catterton's testimony, in which Catterton identified White as the driver of the Intrepid. On cross-examination, defense counsel questioned Catterton about the various deviations in his descriptions of the driver.

---

[4] Catterton is Caucasian, and White is African-American.

[5] Cutler conceded, however, that because Catterton was exposed to the driver of the vehicle for a significant amount of time — more than thirty seconds — the cross-race recognition factor may not have significantly impacted Catterton's identification of White.

White offered two proposed jury instructions regarding eyewitness identification testimony. The first instruction contained the following first paragraph:

> Eyewitness testimony has been received in this trial for the purpose of identifying the defendant as the person who committed the crime(s) charged. The law recognized [sic] that eyewitness identification is not always reliable, and that cases of mistaken identity have been known to occur. You, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him. You should, therefore, view eyewitness testimony with caution and evaluate it carefully in light of the following factors[.]

The instruction then listed a number of factors, including whether the eyewitness had: sufficient opportunity to observe the suspect; prior familiarity with the suspect; described the suspect immediately; or identified the suspect from photographs or a lineup. White also requested an instruction regarding the confidence and accuracy correlation.

Although the district court denied White's request for the proposed jury instructions, it suggested it would give the first paragraph of the first proposed instruction. Instead, however, the district court instructed that, in assessing credibility, the jury could consider "the opportunity they [the witnesses] had to see, hear, and know the things about which they testified; the accuracy of their memories."

The jury convicted White of Counts One and Four. The district court further found White guilty of Counts Five and

6

Six. White was subsequently sentenced to forty-six months'
imprisonment. White timely appealed.

On appeal, White first asserts the district court
abused its discretion in denying his motion to present Cutler's
expert witness testimony regarding the fallibilities of
eyewitness identification. White also contends the district
court abused its discretion in denying his proposed jury
instruction on eyewitness identifications. We will address each
issue in turn.

The admission of expert witness testimony is
controlled by Rule 702 of the Federal Rules of Evidence and the
Supreme Court's decision in Daubert. Under Daubert, a two-part
test must be satisfied to admit expert witness testimony under
Rule 702: "(1) the expert testimony must consist of 'scientific
knowledge' - that is, the testimony must be supported by
appropriate validation; and (2) the evidence or testimony must
'assist the trier of fact to understand the evidence or to
determine a fact in issue.'"[6] United States v. Dorsey, 45 F.3d
809, 813 (4th Cir. 1995) (quoting Daubert, 509 U.S. at 591).
In assessing whether the second Daubert prong is satisfied, "the
Supreme Court warned that . . . a judge must be mindful of other

---

[6] Because the district court concluded Cutler would have
testified to scientific knowledge, the first prong of Daubert
was satisfied and thus is not an issue on appeal.

7

evidentiary rules, such as FRE 403, which permits the exclusion of relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" Id. (quoting Daubert, 509 U.S. at 595). We review decisions excluding testimony for an abuse of discretion. United States v. Harris, 995 F.2d 532, 534 (4th Cir. 1993).

The district court rejected Cutler's testimony regarding the confidence and accuracy correlation under Federal Rule of Evidence 403 because the correlation could not be quantified and would likely confuse the jury. The district court rejected the testimony regarding cross-race recognition, in part, on similar grounds, but also because, according to Cutler's own testimony, the length of time that Catterton was exposed to White likely reduced the impact of this factor on Catterton's identification. The district court ruled Cutler's testimony pertaining to the mug shot recognition was within the jurors' common knowledge, and thus would not be helpful. Finally, the district court concluded that expert testimony detailing the deficiencies in the use of a single photograph "show-up" was unnecessary because defense counsel could elicit the deficiencies in this method of identification on cross-examination.

In light of our deferential standard of review — for an abuse of discretion[7] — we affirm the district court's ruling. Cutler conceded the length of Catterton's exposure to White negated both the cross-race recognition factor and the confidence and accuracy correlation. Further, the mug shot recognition effect appears to be within the scope of the jurors' common knowledge. Lastly, defense counsel did attempt to illuminate potential deficiencies in Catterton's identification of White from a single photograph rather than a photo array. The district court's decision to deny the Daubert motion simply does not constitute an abuse of discretion.

We further reject White's contention that the district court abused its discretion in denying the requested jury instructions. United States v. Singh, 518 F.3d 236, 249 (4th Cir. 2008) (standard of review). We will reverse a district court's refusal to provide a requested instruction "only if the instruction: (1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested

---

[7] "An abuse of discretion can flow from a failure or refusal, either express or implicit, actually to exercise discretion, deciding instead as if by general rule, or even arbitrarily, as if neither by rule nor discretion." Sharpe v. Dir., Office of Workers' Comp. Programs, 495 F.3d 125, 130 (4th Cir. 2007) (internal quotation marks and citation omitted).

instruction seriously impaired the defendant's ability to conduct his defense." United States v. Lewis, 53 F.3d 29, 32-33 (4th Cir. 1995) (internal quotation marks and citation omitted). White fails to meet this standard. The proposed instructions mirrored the basis for the expert witness testimony, and the denial of White's motion to present that testimony obviated the need for the proposed instructions.

For the foregoing reasons, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED