**Edward J. VERDERANE,**
Claimant-Respondent,

v.

**JACKSONVILLE SHIPYARDS, INC.**

**AETNA CASUALTY AND SURETY COMPANY,**
Employer/Carrier-Petitioners,

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, United States Department of Labor, Party-In-Interest—Respondents.**

No. 84-3777.

United States Court of Appeals, Eleventh Circuit.

Sept. 30, 1985.

John E. Houser, Jacksonville, Fla., for employer/carrier-petitioners.

Marianne Demetral Smith, Joshua T. Gillelan, II, Washington, D.C., for party-in-interest-respondents.

Before FAY and JOHNSON, Circuit Judges, and HOFFMAN [*], District Judge.

WALTER E. HOFFMAN, District Judge:

One truism of the law is that substantive and procedural rights may be lost if not asserted in a timely fashion. That truism is no less valid in administrative tribunals than elsewhere. This petition for review raises the issue whether a party can rely on section 8(f) of the Longshore and Harbor Workers' Compensation Act, 33 U.S. C.A. § 908(f) (West Supp.1985) ("the Act"), when the relief afforded by that section was not raised at the first available opportunity. We conclude that a party cannot rely on section 8(f) in these circumstances, and therefore affirm the order of the Benefits Review Board.

## I.

### FACTS

Edward J. Verderane ("claimant"), began working as a ship's coordinator in March 1965, for Jacksonville Shipyards, Inc. ("employer" or "Jacksonville"). Claimant held various jobs with employer until April 1974, when he was diagnosed as having vertigo, a disorder characterized by dizziness and typically caused or exacerbated by excessive noise.[1] Although claimant spent most of the last four years of his employment working away from the noisy shipyard area, he had worked mostly within this area for the previous five years. Learning of the vertigo diagnosis, employer fired claimant.

Before his employment with Jacksonville, Verderane had worked intermittently between 1937 and 1962 for Bethlehem Steel Corporation in its Brooklyn, New York, and Hoboken, New Jersey, shipyards. He retired from Bethlehem in 1962. From 1962 through 1965, he received social security benefits for disability resulting from ear infections and vertigo. Claimant had suffered from ear infections since his teenage years.

After being fired by Jacksonville in 1974, Verderane filed a claim for permanent partial disability compensation against employer and Aetna Casualty Company ("carrier").[2] Administrative Law Judge ("ALJ"), Sherman P. Kimball, presided over a hearing in May 1975. On April 15, 1976, ALJ Kimball found that claimant, while working for employer, had sustained vertigo, which he found to be a permanent, totally disabling occupational disease. The ALJ ordered

---

[*] Honorable Walter E. Hoffman, U.S. District Judge for the Eastern District of Virginia, sitting by designation.

1. One medical dictionary defines "vertigo" as a "hallucination of movement; a sensation as if the external world were revolving around the patient (*objective vertigo*) or as if he himself were revolving in space (*subjective vertigo*)."

*Dorland's Illustrated Medical Dictionary* 1686 (24th ed. 1965).

2. Because the interests of the petitioner employer and the petitioner carrier are the same for purposes of this appeal, we refer to them in this opinion collectively as employer.

employer to make weekly payments to claimant. On April 30, 1976, ALJ Robert J. Feldman denied employer's motion for reconsideration, Kimball no longer then serving as an ALJ.

On appeal to the Benefits Review Board, the Board affirmed ALJ Kimball's decision that claimant had sustained a totally disabling occupational disease, but remanded for a more detailed analysis of claimant's status as an employee within section 2(3) of the Act.[3] ALJ Feldman presided over the hearing on remand. Subsequently, the Assistant Deputy Commissioner, Office of Workers' Compensation Programs ("OWCP"), referred to ALJ Feldman employer's request for a hearing on a newly asserted claim to limit its liability through section 8(f).[4] ALJ Feldman denied the request because the Board had remanded on the issue of section 2(3) coverage alone. He included the denial in his recommended decision on remand, along with his holding that he considered Verderane to have been covered within the meaning of section 2(3) because of his having worked in the shipyard area during the first five years of his employment.

Jacksonville appealed ALJ Feldman's recommended decision on remand. In a decision and order dated June 12, 1981, the Board affirmed ALJ Feldman's decision, remanding solely for a different computation of the award. Regarding employer's request for section 8(f) relief, the Board held that the issue could not be considered because it had not been raised in a timely fashion. Both employer and claimant then filed petitions for review, which were consolidated. This Court dismissed the petitions for review because they were not final. *Jacksonville Shipyards, Inc. v. Estate of Verderane,* 729 F.2d 726 (11th Cir. 1984). Based on an intervening United States Supreme Court opinion clarifying the scope of section 2(3), the Director, OWCP, then moved the Board to vacate its 1981 decision and to reinstate ALJ Kimball's 1976 decision awarding coverage. The Board granted the Director's motion, reinstating ALJ Kimball's decision in all respects. Employer petitioned this Court for review.

## II.

### AVAILABILITY OF SECTION 8(f) RELIEF

■ An extensive set of procedural rules governs claims under the Act. *See* 20

---

**3.** Section 2(3) determines who is covered under the Act. The section reads in part as follows: "The term 'employee' means any persons engaged in maritime employment, including any longshoremen or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and shipbreaker...." 33 U.S.C.A. § 902(3) (West Supp. 1985).

The section 2(3) issue arose because, during the last four years of his employment, claimant had served as manager of the Medical, Safety, and Security Department. ALJ Feldman concluded in his recommended decision on remand that one in this position was not an employee within the meaning of section 2(3), but nevertheless held claimant to be covered by the section because of the several previous years in which he had worked in shipyard jobs.

**4.** Section 8(f) of the Act provides a mechanism by which an employer, if the section applies, can limit its liability to a definite period of payments. The section provides in relevant part:

(1) In any case in which an employee having an existing permanent partial disability suffers injury, the employer shall provide

compensation for such disability as is found to be attributable to that injury based upon the average weekly wages of the employee at the time of the injury. If following an injury falling within the provisions of subdivisions (c)(1)–(20) of this section, the employee is totally and permanently disabled, and the disability is found not to be due solely to that injury, the employer shall provide compensation for the applicable prescribed period of weeks provided for in that section for the subsequent injury, or for one hundred and four weeks, whichever is the greater....

33 U.S.C.A. § 908(f) (West Supp.1985).

The purpose of the section is to help handicapped employees. The limited liability assured by the section encourages employers to hire handicapped persons. *See Mississippi Coast Marine v. Bosarge,* 637 F.2d 994, 1000–01, *modified,* 657 F.2d 665 (5th Cir.1981). Claimants do not suffer because of the liability limitation. They receive the balance of their compensation awards from a "special fund" set up for this purpose. *See* 33 U.S.C.A. §§ 908(f)(2)(A), 944 (West Supp.1985).

C.F.R. §§ 702.11 to .394 (1985). Disputed claims, if not resolved at an informal hearing before the deputy commissioner, generally proceed to a formal proceeding before an ALJ. *See id.* §§ 702.316, .331, .332. Prior to the hearing, each party must submit prehearing statements enumerating the issues that will be raised at the hearing. *See id.* § 702.317; U.S. Dept. of Labor, OWCP, LS–18, "Prehearing Statement." Although the hearing progresses according to the issues in the prehearing statements, issues not included in the statements can be heard even though the hearing would have to be extended. *See id.* § 702.336.

Employers, therefore, have the ability to request section 8(f) relief at the initial hearing before an ALJ. Because of this ability, posthearing requests for section 8(f) relief consistently have been held to be untimely. *See American . Bridge Division v. Director,* 679 F.2d 81, 83 (5th Cir.1982); *General Dynamics Corp. v. Director,* 673 F.2d 23, 26 (1st Cir.1982) (per curiam); *Avallone v. Todd Shipyards Corp.,* 13 BRBS 348,

350, BRB Nos. 79–647, 79–647A, *petition for review denied,* 672 F.2d 901 (2d Cir. 1981); *Dykes v. Jacksonville Shipyards, Inc.,* 13 BRBS 75, BRB No. 80–131 (1981); *Wilson v. Old Dominion Stevedoring Corp.,* 10 BRBS 943, 944, BRB No. 78–636 (1979).[5] The rule serves the same policies of efficiency and fairness that fortify F.R. Civ.P. Rules 8 and 12, which require objections and defenses to be raised at the first available opportunity. *American Bridge,* 679 F.2d at 84; Wright, *The Law of Federal Courts,* § 66, at 434–35 (4th ed. 1983).

Employer raises two contentions against application of the rule that section 8(f) relief is unavailable unless raised at the initial hearing. First, employer appears to argue that a request for section 8(f) relief at the 1975 hearing before ALJ Kimball would somehow have been inappropriate because the request would have contradicted employer's position that claimant was not disabled.[6] The argument lacks merit. Requesting section 8(f) relief and disputing

---

**5.** A 1984 amendment of section 8(f) expressly mandates that requests for section 8(f) relief be made initially by application to the deputy commissioner. Section 8(e)(5), amending section 8(f)(3), provides:

> (3) Any request filed after [September 28, 1984] for apportionment of liability to the liability of the special fund established under section 44 of this Act for the payment of compensation benefits, and a statement of the grounds therefore [sic], shall be presented to the deputy commissioner prior to the consideration of the claim by the deputy commissioner. Failure to present such request prior to such consideration shall be an absolute defense to the special fund's liability for the payment of any benefits in connection with such claim, unless the employer could not have reasonably anticipated the special fund prior to the issuance of a compensation order.

Longshore and Harbor Workers' Compensation Act Amendments of 1984, Pub.L. No. 98–426, § 8(f), 98 Stat. 1639 (1984) (current version at 33 U.S.C.A. § 908(f) (West Supp.1985)).

The amended section 8(f)(3) is inapplicable on this appeal because employer requested section 8(f) relief before September 28, 1984, and only claims filed after this date are covered by the amendment. Furthermore, the amended section discusses only informal procedures conducted before the deputy commissioner. The factual situation both in this appeal and in the cases cited in the above text deals with an em-

ployer who failed to raise section 8(f) at the formal hearings before an ALJ, which occurs after all informal proceedings have ended. Although we of course cannot decide the issue on this appeal, a reasonable inference from the amended section and from the existing case law is that an employer still could be denied the shelter of section 8(f) if the employer raised section 8(f) at the informal hearings but failed to do so at the formal hearing.

**6.** The argument in petitioner's brief is obscured by its cryptic reasoning. The brief states:

> It was never contemplated by this writer that the § 8(f) claim would become a part of the proceedings on remand. It was always regarded as a new, separate, distinct claim. Howbeit, this same ALJ, wearing two hats, could have taken evidence on both issues. In 1975 there had been no suggestion that § 8(f) and the disability issues had to be determined at the same hearing. They are oftentimes antagonistic.

Brief of Petitioner at 12 n. 5.

The thrust of the passage simply may be that counsel was mistaken, an argument that will be considered in Part III of this opinion. The references to the § 8(f) claim as "separate," "distinct," and "antagonistic" suggests, however, that petitioner considers a section 8(f) claim to be inconsistent with a defense to claimant's disability. Therefore, we consider this argument separately.

a claimant's disability indeed are inconsistent. Inconsistent and alternative claims or defenses, however, are a well-accepted feature of modern practice. *See Carroll v. American Bridge Division,* 13 BRBS 759, 760–61, BRB No. 79–522 (1981), *aff'd sub nom. American Bridge Division v. Director,* 679 F.2d 81 (5th Cir.1982) (adopting F.R.Civ.P. Rule 8's position allowing claims or defenses to be asserted alternatively or hypothetically, regardless of consistency); *see also* 5 Wright & Miller, *Federal Practice & Procedure* §§ 1282, 1283 (1969 & Supp.1985) (pleading inconsistent claims and defenses promotes judicial efficiency by allowing thorough development of facts and legal theories at a single trial). Therefore, a request for section 8(f) relief could have been raised at the 1975 hearing before ALJ Kimball even though employer disputed claimant's disability. *See American Bridge,* 679 F.2d at 83–84.

Employer's second argument is no more convincing than its first. The Board's decision in *Egger v. Williamette Iron & Steel Co.,* 9 BRBS 897, 899, BRB No. 78–322 (1979), so the argument goes, first adopted the rule that section 8(f) relief must be claimed at the initial formal hearing. Because Verderane filed his claim before *Egger* had been decided, employer concludes that the rule cannot apply to its request for section 8(f) relief. Employer emphasizes the court's statement that "hereafter the [section 8(f)] issue must be raised at the first hearing of the case." *Egger,* 9 BRBS at 899.

Rather than support employer's analysis, the relevant authority contradicts its fundamental premise. Before *Egger* had been decided, a section 8(f) request apparently was raised in the same hearing at which a claimant's disability was determined.

*American Bridge,* 679 F.2d at 84. Parsing the sentences in *Egger* only confuses the issue. Employer argues that by using "hereafter" in its decision, the Board in *Egger* adopted a new rule. Placed in context, the Board's statement that "hereafter" section 8(f) would have to be raised at the first hearing was admonitory. *See American Bridge,* 679 F.2d at 84. *Egger,* furthermore, concerned a situation in which the section 8(f) issue had been raised but withdrawn before the initial hearing. *See Egger,* 9 BRBS at 899. Thus, in this more limited sense, the Board's opinion disapproved the practice of withdrawing the section 8(f) request and then reasserting it once claimant's disability had been established. *American Bridge,* 679 F.2d at 84; *see Egger,* 13 BRBS at 899–900. Although the message of the "hereafter" language "extended to any case in which the application of Section 8(f) is an issue," this message was delivered in the course of an opinion attempting to clarify that withdrawn section 8(f) requests also would generally be held untimely if subsequently raised. Consequently, the "hereafter" language did not introduce a new rule, but rather clarifies the scope of the already established rule that section 8(f) requests must be raised at the first available opportunity. *See American Bridge,* 679 F.2d at 84.[7]

### III.

### SECTION 22 PETITION FOR MODIFICATION

■ Employer thus lost its ability to claim section 8(f) relief by failing to raise the issue in the 1975 hearing before ALJ Kimball. Arguably, employer still could have had the final compensation award re-

7. Petitioner attempts to show that the Board's practice, prior to *Egger,* was to allow bifurcated hearings on disability and on the section 8(f) issue. *See* Petitioner's Reply Brief at 2–3. In fact, most of the cases cited by petitioner are not even full opinions, but rather summaries and syllabi of decisions by ALJs. The cases, in any event, are inapposite: if they discuss section 8(f) at all, the discussions do not concern bifurcated hearings.

Perhaps as an explanation, Petitioner's Reply Brief states: "It is felt that an attorney has an obligation to read and to accept cases reported as a general store of knowledge. He cannot inquire into the background of every case." Petitioner's Reply Brief at 2. To the extent that this passage argues that counsel's mistaken reading of the cases justifies a late section 8(f) request, the argument will be considered in Part III.

opened under section 22 if there had been a "change in conditions or ... a mistake in a determination of a fact." 33 U.S.C.A. § 922 (West Supp.1985).[8] *See General Dynamics Corp. v. Director*, 673 F.2d 23, 25–26 (1st Cir.1982) (per curiam) (proceeding through a section 22 analysis despite employer's failure to raise section 8(f) in a timely fashion). *But see American Bridge Division v. Director*, 679 F.2d 81, 83 n. 6 (5th Cir.1982) ("The Board has indicated that a section 22 request for modification of the original award may be available to afford section 8(f) relief *if not previously waived*") (emphasis added). Even assuming an employer's ability to reopen a compensation award order after section 8(f) has not been raised in a timely fashion, employer cannot reopen the present award order under any construction of section 22.

A "change in conditions," for purposes of section 22, refers to a change in an employee's physical condition. *General Dynamics*, 673 F.2d at 25 & n. 6. Because claimant's physical condition has not been shown to have changed during the time he received awards, the inquiry advances to the second issue: whether there was a mistake in the determination of a fact. Counsel for petitioners admits that he misjudged an employer's ability to seek section 8(f) relief in the same hearing in which a claimant's ability is disputed. *See supra*, Note 6 of this opinion.

Section 22 petitions are designed to prevent injustice resulting from the erroneous fact-finding of officials such as an ALJ, not to save litigants from the consequences of their counsel's mistakes. *See General Dynamics*, 673 F.2d at 26; *Dykes v. Jacksonville Shipyards*, 13 BRBS 75, 76, BRB No. 80–131 (1981) ("Section 22 cannot be used so as to circumvent the rule that Section 8(f) relief is waived if not properly raised at the first possible opportunity."). Petitioner knew of the facts that supported section 8(f) relief at the time of the 1975 hearing before ALJ Kimball,[9] and thus should have raised the issue at that time.

Employer has failed to persuade us that a decision precluding it from section 8(f) relief represents the "horrible, litigation-producing result" that it claims. Rather, we believe that such a decision serves the orderly administration of justice.

The order of the Benefits Review Board is AFFIRMED.

---

**8.** A section 22 petition for modification actually is the only means by which to reopen a final compensation award order. Consequently, employer's request for section 8(f) relief in August 1978 in effect was a petition for modification even though it was not so designated. *See Wilson v. Old Dominion Stevedoring Corp.*, 10 BRBS 943, 944 n. 1, BRB No. 78–636 (1979) (treating an employer's request for section 8(f) relief as a request for modification under section 22). Employer's attempt to characterize its claim as one of indemnity, rather than a petition for modification, is therefore specious.

**9.** Indeed, employer argued as one defense to the compensation claim in the 1975 hearing that claimant had fraudulently concealed his pre-existing ear condition. *See* Petitioner's Brief at 4, 8, and 10. ALJ Kimball, incidentally, stated in his decision that he found no such concealment.