OPINION
KING, Circuit Judge:
As recounted in our prior opinion in these Black Lung Benefits Act proceedings, see Sharpe v. Dir., OWCP, 495 F.3d 125 (4th Cir.2007) (“Sharpe I ”), coal miner William A. Sharpe was awarded total disability benefits in 1993, and received those benefits until he died in 2000. A week after Mr. Sharpe’s death, his widow, Mae Ann Sharpe, made a claim for survivor’s benefits. Within two months of Mrs. Sharpe’s claim being filed — and nearly seven years after Mr. Sharpe’s living miner’s claim was approved — liable employer Westmoreland Coal Company filed a modification request, by which it sought reconsideration of Mr. Sharpe’s 1993 award of benefits (the “Modification Request”). In 2004, an administrative law judge (“ALJ”) agreed to modify the 1993 award, retroactively denying Mr. Sharpe’s living miner’s claim and, thus, also rejecting Mrs. Sharpe’s survivor’s claim. Then, in 2005, the Benefits Review Board (the “BRB”) affirmed the ALJ’s decision. On Mrs. Sharpe’s petition for review, however, we vacated and remanded for further proceedings, explaining that the ALJ had failed to exercise the discretion accorded to him with respect to the Modification Request. See Sharpe I, 495 F.3d at 128.
On remand, the ALJ again denied Mr. Sharpe’s living miner’s claim and Mrs. Sharpe’s survivor’s claim, but the BRB reversed. Accordingly, this matter is now before us on Westmoreland’s petition for review, with Mrs. Sharpe and the Director *320 of the Office of Workers’ Compensation Programs being the designated respondents. As explained below, we deny Westmoreland’s petition for review and thereby affirm the BRB’s decision in Mrs. Sharpe’s favor.
I.
A.
The early history of the Sharpes’ claims was outlined in our Sharpe I opinion. See 495 F.3d at 128-30. William Sharpe worked for thirty-nine years in the coal mines of southern West Virginia and western Virginia, and was employed by Westmoreland Coal Company for at least eight of those years. Mr. Sharpe last worked for Westmoreland as a manager in and around underground coal mines, and he retired in 1988. Mr. Sharpe had previously worked in various mining operations as a general superintendent, a foreman, a section foreman, a rock driller, and a coal loader. In March 1989, Mr. Sharpe filed his claim for benefits, maintaining that he suffered from black lung disease, or pneumoconiosis. See 30 U.S.C. § 922(a)(1) (providing that, “[i]n the case of total disability of a miner due to pneumoconiosis, the disabled miner shall be paid benefits”). An ALJ denied Mr. Sharpe’s living miner’s claim in 1991, but the BRB subsequently vacated the ALJ’s finding that Mr. Sharpe did not suffer from complicated pneumoconiosis. See, e.g., Westmoreland Coal Co. v. Cox, 602 F.3d 276, 282 (4th Cir.2010) (recognizing that condition described in 30 U.S.C. § 921(c)(3) is known as statutory “complicated pneumoconiosis” and entitles claimant to irrebuttable presumption of total disability). The living miner’s claim was then remanded to a different ALJ, who, by decision of August 26, 1993 (the “1993 ALJ Decision”), found that Mr. Sharpe suffered from complicated pneumoconiosis and awarded him benefits retroactive to the initial filing of his living miner’s claim in 1989.
Westmoreland appealed the 1993 ALJ Decision to the BRB, which affirmed the benefits award on September 28, 1994. Significantly, Westmoreland failed to pursue its statutory right to seek judicial review of the BRB’s affirmance of the 1993 ALJ Decision. See 33 U.S.C. § 921(c) (allowing that “[a]ny person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred”).[1] Mr. Sharpe thus received total disability benefits from 1989 until his death on April 18, 2000.
After her husband died, Mae Ann Sharpe promptly filed, on April 26, 2000, her claim for survivor’s benefits. See 30 U.S.C. § 922(a)(2) (providing that, “[i]n the case of death of a miner due to pneumoconiosis ..., benefits shall be paid to his widow (if any) at the rate the deceased miner would receive such benefits if he were totally disabled”).[2] On June 15, 2000, *321 Westmoreland filed its Modification Request, for the purpose of upsetting the 1993 award of benefits on Mr. Sharpe’s living miner’s claim. See 33 U.S.C. § 922 (authorizing modification of a benefits award on grounds including “a mistake in a determination of fact”); 20 C.F.R. § 725.310 (implementing 33 U.S.C. § 922 with respect to black lung benefits).[3] According to Westmoreland, the 1993 ALJ Decision was premised on a mistake of fact, in that Mr. Sharpe had never suffered from complicated pneumoconiosis. On July 23, 2002, an ALJ denied the Modification Request and awarded benefits to Mrs. Sharpe on her survivor’s claim. Westmoreland appealed to the BRB, which, on August 22, 2003, vacated and remanded for further proceedings.
Thereafter, by decision of April 30, 2004 (the “2004 ALJ Decision”), the ALJ reversed himself and concluded that a mistake of fact had been made in the 1993 ALJ Decision’s finding that Mr. Sharpe suffered from complicated pneumoconiosis. On that basis, the ALJ modified the 1993 ALJ Decision by retroactively denying Mr. Sharpe’s living miner’s claim, and consequently also denied Mrs. Sharpe’s surviv- or’s claim. The BRB affirmed the 2004 ALJ Decision by its decision of June 13, 2005 (the “2005 BRB Decision”), likewise assuming that Westmoreland had a right to modification of the 1993 award upon simply establishing a mistake of fact.
B.
The Sharpe I proceedings arose from Mrs. Sharpe’s petition for review of the 2005 BRB Decision, in which she contended, inter alia, that the BRB had erroneously affirmed the 2004 ALJ Decision’s modification of the 1993 ALJ Decision. We, of course, agreed with Mrs. Sharpe. That is, we recognized that “the modification of a black lung award or denial does not automatically flow from a mistake in an earlier determination of fact.” Sharpe I, 495 F.3d at 132. Rather, the adjudicator “ ‘may, if he so chooses, modify the final order on the claim’ upon finding [a] mistake of fact.” Id. at 131 (quoting Jessee v. Dir., OWCP, 5 F.3d 723, 725 (4th Cir.1993)). In exercising that discretion, “modification should be made only where doing so will ‘render justice under the act.’ ” Id. at 132 (quoting Banks v. Chi. Grain Trimmers Ass’n, 390 U.S. 459, 464, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1968)); see also Betty B Coal Co. v. Dir., OWCP, 194 F.3d 491, 501 (4th Cir.1999) (“[W]e have no quarrel with encouraging ALJs to exercise their discretion to reopen when doing this would promote justice (and we would not hesitate to correct abuses of that discretion).... ”). Applying those principles to the rulings on Westmoreland’s request to modify the 1993 award of living miner’s benefits to Mr. Sharpe, we explained that
none of the administrative decisions rendered in connection with the Modification Request assessed all the factors relevant to an exercise of sound discretion. Instead, they addressed only one — whether a mistake of fact had been made in the 1993 ALJ Decision. Because the 2004 ALJ Decision (affirmed by the 2005 BRB Decision) found that a mistake of fact had been made, the adju *322 dicators were obliged to exercise their sound discretion, pursuant to [20 C.F.R. § 725.310(a)], by evaluating the Modification Request in light of whether reopening the case would render justice under the [Black Lung Benefits Act].
Sharpe I, 495 F.3d at 132; see also id. at 134 (concluding that the ALJ’s and the BRB’s “misapprehension of the applicable legal standard is, by definition, an abuse of discretion”).
In remanding this matter, we instructed that “a proper exercise of discretion should lead the adjudicators to assess, in addition to the need for accuracy, the diligence and motive of Westmoreland in seeking modification ..., the possible futility of ... modification, and other factors that may bear on whether [modification] will ‘render justice under the Act.’ ” Sharpe I, 495 F.3d at 134; see also id. at 133 n. 15 (observing that “finality interests may sometimes be relevant to a proper modification request ruling,” though “ ‘the “principle of finality” just does not apply to ... black lung claims as it does in ordinary lawsuits’ ” (quoting lessee, 5 F.3d at 725)). For further guidance, we provided the following examples of potentially “significant factual issues”:
• Why did Westmoreland wait to seek modification under § 725.310(a) until June 2000, two months after Mr. Sharpe’s death, and nearly seven years after the BRB had affirmed his living miner’s award (a decision that Westmoreland never appealed)?
• Should Westmoreland’s motive in seeking modification be deemed suspect?
• Was the Modification Request part and parcel of Westmoreland’s defense to Mrs. Sharpe’s claim for survivor’s benefits, which had been filed less than two months earlier?
• Is the Modification Request futile or moot, in that no overpayments made to Mr. Sharpe could be recovered?
• Is the Modification Request akin to a request for an advisory opinion, in that a favorable resolution thereof will have no impact on the living miner’s claim?
Id. at 133. Relevant to those issues, we observed that “Westmoreland is unable to seek recovery from Mrs. Sharpe for any overpayments made under Mr. Sharpe’s living miner’s claim,” and that the company “is only entitled to seek recovery of [any such] overpayments ... from Mr. Sharpe’s estate.” Id. at 132 (citing 20 C.F.R. § 725.540(d)).[4] We also acknowledged that, if Westmoreland were to “make a compelling showing that [the issues] should be resolved in its favor[,] such a showing would be entitled to appropriate consideration by the adjudicators.” Id. at 133.[5]
C.
1.
On remand, the ALJ conducted a January 9, 2008 hearing, during which Mrs. *323 Sharpe testified and Mr. Sharpe’s “Last Will and Testament” was entered into the record. Premised on that evidence, the ALJ found in his subsequent decision of March 24, 2008 (the “2008 ALJ Decision”), that “[Mr. Sharpe’s] estate has no assets from which Westmoreland can recoup its payments” on the 1993 living miner’s benefits award. See 2008 ALJ Decision 8 & n.8 (explaining that the Sharpes had jointly owned all their property, that Mrs. Sharpe was the sole beneficiary of her husband’s life insurance policy, and that, although Mr. Sharpe willed his possessions to his wife, “there was nothing in the estate to pass to her through his will”).
Even so, the ALJ determined that Westmoreland’s Modification Request was not futile, because reconsideration of the 1993 finding that Mr. Sharpe suffered from complicated pneumoconiosis “might be the only way in which Westmoreland could protect itself from an automatic award of benefits on [Mrs. Sharpe’s] survivor’s claim.” 2008 ALJ Decision 10. The ALJ cited the “irrebuttable presumption ... that a miner’s death was due to pneumoconiosis” that attaches to a finding of complicated pneumoconiosis, see 20 C.F.R. § 718.304, as well as the possibility that Mrs. Sharpe could employ the doctrine of “offensive nonmutual collateral estoppel” to foreclose relitigation of Mr. Sharpe’s diagnosis, see Collins v. Pond Creek Mining Co., 468 F.3d 213 (4th Cir.2006) (according preclusive effect in survivor’s claim to earlier finding of “simple pneumoconiosis” in living miner’s claim). In the ALJ’s view, there was “no question that preclusion of the operation of nonmutual offensive collateral estoppel by modification of [Mr. Sharpe’s living] miner’s award belies any contention that modification would be ‘futile’ to Westmoreland.” 2008 ALJ Decision 10. The ALJ emphasized that, even though our Collins opinion postdated the Modification Request, Westmoreland was “wise” to anticipate a Collins-type “collateral estoppel application.” Id. Summarizing his futility ruling, the ALJ declared that “an employer’s objective to thwart a survivor’s claim (or a potential survivor’s claim) is sufficient basis for finding that modification of a miner’s claim is not a futile act, regardless of whether the employer could recoup the payment of benefits it made to the miner.” Id. at 11.
On the question of diligence, the ALJ observed that only Westmoreland, and not Mr. or Mrs. Sharpe, was prejudiced or harmed by any lack of diligence on Westmoreland’s part, in that ‘Westmoreland paid [Mr. Sharpe] Black Lung benefits each month for seven years (which also benefited [Mrs. Sharpe]).” 2008 ALJ Decision 8. Additionally, the ALJ credited Westmoreland’s assertion that its Modification Request was premised on new evidence uncovered during “discovery efforts that were prompted by the filing of the survivor’s claim.” Id. at 9 n.9. In any event, the ALJ deemed it “immaterial whether or not Westmoreland could have discovered the new evidence prior to the miner’s death,” in that “ ‘a modification request cannot be denied out of hand ... on the basis that the evidence may have been available at an earlier stage in the proceeding.’ ” Id. (emphasis omitted) (quoting Old Ben Coal Co. v. Dir., OWCP, 292 F.3d 533, 546 (7th Cir.2002)).
Addressing Westmoreland’s motive for the Modification Request, the ALJ found that the company “simply used the available legal means to attempt to protect and obtain justice for itself.” 2008 ALJ Decision 10. “In short,” the ALJ concluded, “where a party’s action is not prohibited by law it should not be precluded simply because the party is motivated by self-interest.” Id.
*324 The ALJ’s analysis pivoted on his belief that diligence, motive, futility, and other “justice under the act” factors are to be considered only as a potential “bar” to modification, and that “modification should be barred only where the party seeking it has engaged in ... ‘bad conduct.’ ” 2008 ALJ Decision 7. The ALJ specified two “type[s] of ‘bad conduct’ that should disqualify an applicant from seeking modification” — “refusal to participate in the prior administrative proceedings” and “attempting to overcome earlier litigation mistakes by ‘retrying’ the case” — then found “that neither of these two disqualifying circumstances is present in the instant case.” Id. (citing McCord v. Cephas, 532 F.2d 1377 (D.C.Cir.1976); Kinlaw v. Stevens Shipping & Terminal Co., 33 Ben. Rev. Bd. Serv. (MB) 68 (1999), aff'd, 238 F.3d 414 (4th Cir.2000) (unpublished table decision)); see also id. at 11 n.16 (acknowledging “several additional circumstances which might disqualify a party from seeking modification,” including serial modification requests submitted with no new evidence, and a modification request made without new evidence and after a long and unexplained delay).
Absent what he characterized as disqualifying “bad conduct,” the ALJ considered himself constrained to grant Westmoreland’s Modification Request if a mistake of fact was previously made. In the ALJ’s words, “if the award of benefits was made erroneously, on what theory of ‘justice’ should that award be permitted to stand? Indeed, to uphold the award, in the face of an erroneous finding that the miner had complicated pneumoconiosis, could result in the unjust enrichment of the miner’s wife.” 2008 ALJ Decision 9. Thus turning to the accuracy of the 1993 ALJ Decision, the ALJ stood by his determination in the 2004 ALJ Decision that the evidence established only simple, rather than complicated, pneumoconiosis, and further failed to show that Mr. Sharpe was totally disabled by a respiratory or pulmonary impairment. See id. at 12-18. The ALJ therefore retroactively denied Mr. Sharpe’s living miner’s claim, and also denied Mrs. Sharpe’s survivor’s claim. Id. at 18.[6]
2.
In reversing the 2008 ALJ Decision by its decision of June 17, 2009 (the “2009 BRB Decision”), the BRB was mindful of its deferential scope of review, carefully explaining: “If the administrative law judge’s findings of fact and conclusions of law are supported by substantial evidence, are rational, and are consistent with applicable law, they are binding upon this Board and may not be disturbed.” See 2009 BRB Decision 2 (citing 33 U.S.C. § 921(b)(3)). The 2008 ALJ Decision’s “justice under the act” analysis was unsustainable, according to the BRB, because it was not consistent with applicable law, i.e., the ALJ “did not address the diligence, *325 motive and futility factors in the manner directed by [this Court’s Sharpe I opinion].” See id. at 7.
The BRB interpreted Sharpe I to hold “that modification should be granted only when to do so would render justice in the claim to be reopened.” 2009 BRB Decision 7 (emphasis added). With that understanding, the BRB limited the futility question to whether Westmoreland could recoup any overpayment of living miner’s benefits from Mr. Sharpe’s estate — the answer being an undisputed “no.” See id. at 8. Thus, the BRB deemed the ALJ’s futility analysis to be “fundamentally flawed,” in that “he determined that it was in the interest of justice to grant modification of the decision in [Mr. Sharpe’s] claim in order to preclude [Mrs. Sharpe’s] reliance on collateral estoppel in the survivor’s claim, a separate claim.” Id.
With respect to diligence, the BRB did not directly confront the ALJ’s finding that Westmoreland alone was prejudiced by the seven-year gap between the 1993 ALJ Decision and the 2000 Modification Request. Moreover, the BRB did not question the premise, recited by the ALJ, that “ ‘a modification request cannot be denied out of hand ... on the basis that the evidence may have been available at an earlier stage in the proceeding.’ ” See 2008 ALJ Decision 9 n.9 (emphasis omitted) (quoting Old Ben Coal Co., 292 F.3d at 546). The BRB took issue, however, with the ALJ’s acceptance of Westmoreland’s assertion that its Modification Request was premised on new evidence uncovered during “discovery efforts that were prompted by the filing of the survivor’s claim.” See id. Specifically, the BRB pointed out that Westmoreland relied solely on old evidence when it filed its Modification Request, and only submitted its new evidence after the modification proceedings were already underway. See 2009 BRB Decision 7 & n.3.
The BRB concluded that “the nature of the supporting evidence [Westmoreland] initially proffered,” along with “[t]he timing of [its Modification Request],” proved what the company itself admitted: that its “motive in seeking to set aside the award of benefits in [Mr. Sharpe’s] claim was to evade application of the irrebuttable presumption of death due to pneumoconiosis,” as well as “application of the doctrine of collateral estoppel,” in Mrs. Sharpe’s survivor’s claim. See 2009 BRB Decision 6, 7-8. The BRB also indicated that, by finding “that correcting an erroneous award of benefits trumped concerns about employer’s reasons for requesting modification,” the ALJ had wrongly discounted the motive behind Westmoreland’s Modification Request. See id. at 7.
Taking account of motive, the BRB obsexwed that Westmoreland “was attempting to circumvent the law, which, in this case, prohibited employer from defending against the survivor’s claim by showing that the miner did not have complicated pneumoconiosis.” 2009 BRB Decision 8. The BRB then underscored that “[g]ranting modification when the moving party’s motive is to circumvent the law does not render justice under the Act.” Id. For support, the BRB cited Verderane v. Jacksonville Shipyards, Inc., 772 F.2d 775, 780 (11th Cir.1985) (disallowing modification under 33 U.S.C. § 922 where employer sought to circumvent its earlier waiver of limited liability relief). The BRB also invoked Sharpe I, concluding that we therein “explicitly condemned” the motive “ ‘to thwart ... claimant’s good faith claim’ ” for being adverse to “the remedial purpose of the [Black Lung Benefits Act].” 2009 BRB Decision 8 (first alteration in original) (quoting Sharpe I, 495 F.3d at 133). That is, as we recognized in Sharpe I, “ ‘if the party’s purpose in filing a modification is to thwart a claimant’s good faith claim *326 or an employer’s good faith defense, the remedial purpose of the statute is no longer served.’ ” 495 F.3d at 133 (quoting Old Ben Coal Co., 292 F.3d at 546).
Importantly, because there was “nothing remarkably different about the new evidence that [Westmoreland eventually] submitted,” the BRB reasoned that it was appropriate to consider “the interest in finality.” See 2009 BRB Decision 8 (citing Sharpe I, 495 F.3d at 133 n. 15 (recognizing that “finality interests may sometimes be relevant to a proper modification request ruling”)). The BRB noted the absence of “particularly reliable evidence,” such as “autopsy evidence,” id. at 9, and concluded, given the circumstances, that it was “proper to grant survivor’s benefits based on finding[s] made during the miner’s life,” id. at 11. Drawing on a Seventh Circuit opinion approving the use of offensive nonmutual collateral estoppel in a survivor’s claim, the BRB explained: “ £[T]here is no point in readjudicating the question whether a given miner had pneumoconiosis unless it is possible to adduce highly reliable evidence — which as a practical matter means autopsy results. Otherwise the possibility that the initial decision was incorrect is no reason to disturb it.’ ” Id. (quoting Zeigler Coal Co. v. Dir., OWCP, 312 F.3d 332, 334 (7th Cir.2002)).
Having assessed futility, diligence, motive, and finality, the BRB concluded “that modification [of Mr. Sharpe’s living miner’s benefits award] would not render justice.” 2009 BRB Decision at 9. But the BRB did not stop there; rather, it proceeded to review — and reject — the ALJ’s ruling that the 1993 complicated pneumoconiosis finding was premised on a mistake of fact. See id. (acknowledging significance of “accuracy” in modification proceedings). In so doing, the BRB decided that the ALJ’s accuracy determination was “neither rational nor supported by substantial evidence.” Id. Rather, the 2008 ALJ Decision “was based on more of the same evidence considered [in 1993], and on a flawed analysis of [the 1993 ALJ Decision].” Id. at 12.
The BRB’s final conclusion concerning the Modification Request was that the ALJ “abused his discretion in holding that modification of the decision awarding benefits in [Mr. Sharpe’s] claim was in the interest of justice.” 2009 BRB Decision 12. According to the BRB, the ALJ’s misapprehension of the applicable law led to “a clear error of judgment on the conclusion he reached upon a weighing of the relevant factors.” Id. (alteration and internal quotation marks omitted). Consequently, the BRB reversed the 2008 ALJ Decision insofar as it granted modification, by retroactive denial, of Mr. Sharpe’s living miner’s benefits award. Id. The BRB further concluded that “offensive non-mutual collateral estoppel precludes [Westmoreland] from relitigating, in [Mrs. Sharpe’s] survivor’s claim, the issue of the existence of complicated pneumoconiosis,” and that Mrs. Sharpe “is entitled to the irrebuttable presumption of death due to pneumoconiosis set forth in [20 C.F.R. § 718.304].” Id. at 14. The BRB thus recognized Mrs. Sharpe’s “entitlement to benefits in the survivor’s claim” and reversed the ALJ’s contrary ruling. Id. at 16-17.[7]
*327 II.
As we recognized in Sharpe I, an ALJ possesses broad — but not unlimited— discretion in ruling on modification requests. See 495 F.3d at 130 (“Such an exercise of discretion by an ALJ ... ‘is not boundless and subject to automatic affirmance.’ ” (quoting Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir.1999))). A modification ruling will be reversed if it “was ‘guided by erroneous legal principles,’ or if the adjudicator ‘committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.’ ” Id. (quoting Westberry, 178 F.3d at 261). Such standard is consistent with the BRB’s general mandate to affirm the ALJ if his “findings of fact and conclusions of law are supported by substantial evidence, are rational, and are consistent with applicable law.” See 2009 BRB Decision 2 (citing 33 U.S.C. § 921(b)(3)). Where the BRB has reversed the ALJ, we must “review the BRB’s decision for errors of law and to ensure the BRB’s decision adhered to its statutory standard of review.” Dehue Coal Co. v. Ballard, 65 F.3d 1189, 1193 (4th Cir.1995). More generally, “we review de novo the BRB’s conclusions of law.” Collins v. Pond Creek Mining Co., 468 F.3d 213, 217 (4th Cir.2006) (conducting de novo review of legal aspects of BRB’s collateral estoppel ruling).
III.
A.
In assessing Westmoreland’s petition for review of the 2009 BRB Decision, we begin with the Modification Request. Consistent with the modification statute (33 U.S.C. § 922), the implementing regulation provides:
Upon his or her own initiative, or upon the request of any party on grounds of a change in conditions or because of a mistake in a determination of fact, the deputy commissioner may, at any time before one year from the date of the last payment of benefits, or at any time before one year after the denial of a claim, reconsider the terms of an award or denial of benefits.
20 C.F.R. § 725.310(a);[8] see also 33 U.S.C. § 922 (specifying that “a new compensation order ... may terminate, continue, reinstate, increase, or decrease ... compensation, or award compensation”). To be sure, “[t]he plain import of [the mistake-of-fact provision is] to vest a deputy commissioner with broad discretion to correct mistakes of fact, whether demonstrated by wholly new evidence, cumulative evidence, or merely further reflection on the evidence initially submitted.” O’Keefe v. Aerojet-Gen. Shipyards, Inc., 404 U.S. 254, 256, 92 S.Ct. 405, 30 L.Ed.2d 424 (1971). Significantly, however, due consideration must yet be given to whether modification would render justice under the Black Lung Benefits Act, whose stated purpose is
to provide benefits ... to coal miners who are totally disabled due to pneumoconiosis and to the surviving dependents of miners whose death was due to such disease; and to ensure that in the future adequate benefits are provided to coal miners and their dependents in the *328 event of their death or total disability due to pneumoconiosis.
30 U.S.C. § 901(a); see Old Ben Coal Co. v. Dir., OWCP, 292 F.3d 533, 546 (7th Cir.2002) (“[A]n ALJ’s administration of ‘justice’ [must] be grounded in the stated purpose of the Act____”); Gen. Dynamics Corp. v. Dir., OWCP, 673 F.2d 23, 25 (1st Cir.1982) (“In deciding whether to reopen a case under [33 U.S.C. § 922], a court must balance the need to render justice against the need for finality in decision making: The basic criterion is whether reopening will ‘render justice under the act.’ ” (internal quotation marks omitted)).
We endeavored in our Sharpe I opinion to outline the “justice under the act” factors, as described by this Court, our sister circuits, and the Supreme Court. Unfortunately, instead of heeding the legal principles spelled out in Sharpe I and other pertinent authorities, the 2008 ALJ Decision concocted a new test for modification requests, under which modification must automatically be granted if the adjudicator finds (1) a prior mistake of fact and (2) an absence of so-called “bad conduct” by the requesting party. Simply put, the ALJ’s test is not the proper analysis. While the ALJ certainly enjoys wide discretion in deciding whether to modify a benefits award, that discretion does not extend to reinventing the applicable law.
In these circumstances, the 2009 BRB Decision properly concluded, faithful to the BRB’s statutory standard of review, that the ALJ was guided by erroneous legal principles and, thus, abused his discretion in granting Westmoreland’s Modification Request. Moreover, the BRB was right to reverse the ALJ’s modification ruling, rather than vacate and remand for further proceedings.
Notably, the respondent Director of the Office of Workers’ Compensation Programs urges the very disposition that we announce today, but on the narrow ground that Westmoreland’s Modification Request is fatally futile. The Director, like the BRB, places the onus on Westmoreland to “show that it can obtain one of the statutory remedies in the claim it seeks to modify,” i.e., “in Mr. Sharpe’s lifetime claim.” Br. of Fed. Resp’t 24. According to the Director, the relief sought by Westmoreland — “[r]elief from the collateral estoppel effect of a factual finding” — “is not an available statutory remedy.” Id. Moreover, the Director asserts that the statutory remedies that do exist — including having the living miner’s award “terminate[d]” or “decrease[d],” see 33 U.S.C. § 922 — are not obtainable by Westmoreland because “it cannot recover any of the payments made on that claim.” Br. of Fed. Resp’t 24. In the Director’s view, that is the end of the Modification Request analysis, given that “if the request for relief is futile, modification must be denied on that basis alone.” Id. at 15 n.7 (citing Old Ben Coal Co., 292 F.3d at 547, for the proposition that “the remedial purpose of the Act ... would be thwarted if an ALJ were required to reopen proceedings if it were clear from the moving party’s submissions that reopening could not alter the substantive award”).
We generally accord deference to the Director, as the administrator of the Black Lung Benefits Act, “in his reasonable interpretation of the Act’s ambiguous provisions.” W. Va. CWP Fund v. Stacy, 671 F.3d 378, 388 (4th Cir.2011) (explaining that when “the Director’s position is being advanced via litigation, it is entitled to respect but only to the extent that it has the power to persuade” (alterations and internal quotation marks omitted)). We need not ratify nor reject the bright-line futility ruling advocated by the Director today, however, because the 2009 BRB *329 Decision otherwise merits affirmance.[9] Adapting the words of the Seventh Circuit’s Old Ben Coal Co. opinion to the present situation, “[w]e do not think it wise or consonant with the grant of discretion in the statute ... to unnecessarily cabin the ALJ’s ability to address the complexities of a motion to reopen.” See 292 F.3d at 547.
Notwithstanding the possible futility of Westmoreland’s Modification Request, the motive behind it is patently improper. See 2009 BRB Decision 8 (denouncing Westmoreland’s “attempt[] to circumvent the law, which, in this case, prohibited employer from defending against the survivor’s claim by showing that the miner did not have complicated pneumoconiosis” (citing Sharpe I, 495 F.3d at 138)). We indeed highlighted in Sharpe I that, “ ‘if the party’s purpose in filing a modification is to thwart a claimant’s good faith claim or an employer’s good faith defense, the remedial purpose of the statute is no longer served.’ ” 495 F.3d at 133 (quoting Old Ben Coal Co., 292 F.3d at 546). The ALJ disregarded that principle, instead validating Westmoreland’s motive as occasioning the simple use of “the available legal means to attempt to protect and obtain justice for itself.” 2008 ALJ Decision 10. But the Old Ben Coal Co. court rejected the ALJ’s exact premise, concluding that, where a modification request is aimed at thwarting a good faith claim or defense, the denial of modification does not constitute “ ‘punish[ment]’ ” for “simply ... employing] the procedural mechanisms instituted by Congress.” See 292 F.3d at 546. At bottom, allowing employers to regularly use modification to evade application of the collateral estoppel doctrine and the irrebuttable presumption of death due to pneumoconiosis would effectively eradicate those entrenched legal principles. See Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 24-26, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976) (upholding irrebuttable presumption of death due to pneumoconiosis); Zeigler Coal Co. v. Dir., OWCP, 312 F.3d 332, 333 (7th Cir.2002) (observing “that normal rules of preclusion govern administrative proceedings in black lung cases”); see also supra note 2 (relaying that, under recent amendments to the Black Lung Benefits Act, there is now an automatic entitlement to survivor’s benefits).
We leave open the question of whether such an improper motive can ever be outweighed by the strong interest in accuracy underlying the modification statute, for the 2009 BRB Decision soundly concluded that accuracy cannot offset motive and other “justice under the act” factors here. The BRB directed some attention to Westmoreland’s diligence, pointing out that the company&emdash;having sat silent for years since forgoing its right to this Court’s review of the 1993 ALJ Decision&emdash;filed the 2000 Modification Request in response to Mrs. Sharpe’s survivor’s claim and only later proffered new evidence. See 2009 BRB Decision 7 & n.3.[10]
*330 The BRB focused more intently on the quality of the evidence, old and new, concluding that it was not sufficiently compelling to justify reversing the 1993 living miner’s benefits award. See 2009 BRB Decision 8 (deeming it appropriate to consider “the interest in finality” because there was “nothing remarkably different about the new evidence”); see also Old Ben Coal Co., 292 F.3d at 547 (explaining that the modification analysis “will no doubt need to take into consideration many factors including ... the quality of the new evidence”). In allowing the 2009 BRB Decision to stand, we are not unmindful of the modification statute’s general “preference for accuracy over finality in the substantive award.” See Old Ben Coal Co., 292 F.3d at 541. We also recognize that modification does not always require “a smoking-gun factual error, changed conditions, or startling new evidence.” See Jessee v. Dir., OWCP, 5 F.3d 723, 725 (4th Cir.1993) (observing that “the statute and regulations give the deputy commissioner the authority ... to simply rethink a prior finding of fact”). But where, as here, a modification request is belatedly made with an improper motive and without compelling new evidence, the interest in finality rightly carries a great deal of weight. See Old Ben Coal Co., 292 F.3d at 547 (“[W]e [do not] preclude the possibility that, in a given case, it might be quite appropriate to permit [the concern for finality of decision] to prevail in the adjudication of [the] case.”).
Unlike the 2008 ALJ Decision, the 2009 BRB Decision acknowledged and applied the correct legal principles, arriving at the ineluctable conclusion that retroactively denying the late Mr. Sharpe’s living miner’s benefits award, in order to foil his widow’s good faith survivor’s claim, would not render justice under the Black Lung Benefits Act. We therefore will not disturb the BRB’s rulings that the ALJ abused his discretion in granting Westmoreland’s Modification Request, and that the ALJ’s erroneous decision was subject to outright reversal.[11]
B.
Turning to the collateral estoppel issue, we recognized in our 2006 opinion in Collins v. Pond Creek Mining Co. that a widow could rely on offensive non-mutual collateral estoppel to establish simple pneumoconiosis in her survivor’s claim. *331 See 468 F.3d 213, 217-23 (4th Cir.2006). We explained therein that
[ a] party seeking to rely on the doctrine of collateral estoppel is obliged to establish five elements: (1) that the issue sought to be precluded is identical to one previously litigated (“element one”); (2) that the issue was actually determined in the prior proceeding (“element two”); (3) that the issue’s determination was a critical and necessary part of the decision in the prior proceeding (“element three”); (4) that the prior judgment is final and valid (“element four”); and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum (“element five”).
Id. at 217 (internal quotation marks omitted). We also recognized that, where the proponent of collateral estoppel was a non-party to the prior proceeding, “we are obliged to assess whether allowing her to rely on the doctrine of offensive non-mutual collateral estoppel might be unfair to [the opposing party].” Id. at 221 (outlining “four nonexclusive factors” to be considered under Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331-32, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), including “whether procedural opportunities are available to [the opposing party] in the present proceeding that were unavailable to it in the [prior] proceeding”).
Although the ALJ opined that findings of complicated pneumoconiosis should never be given preclusive effect, see supra note 6 (discussing 2008 ALJ Decision 11 n.15), we agree with the BRB that the widow of a black lung benefits recipient may rely on offensive nonmutual collateral estoppel to establish complicated pneumoconiosis in her survivor’s claim, see 2009 BRB Decision 12-16. Indeed, Westmoreland does not advocate a blanket bar, but rather asserts that collateral estoppel should be unavailable to Mrs. Sharpe in the particular circumstances of this case. Westmoreland principally contends that the complicated pneumoconiosis finding, made in the 1993 ALJ Decision and affirmed by the BRB in 1994, is not final (element four of the collateral estoppel test); that it did not have a full and fair opportunity to litigate the issue in the previous forum (element five); and that new procedural opportunities are now available to it (one of the Parklane Hosiery Co. fairness factors). All of those arguments rest on the notion that Westmoreland’s Modification Request “validly placed the prior findings at issue.” See Br. of Pet’r 42.
Westmoreland’s assertion that its Modification Request hindered the finality of the decisions finding complicated pneumoconiosis must be rejected for the reasons delineated in the 2009 BRB Decision:
Under [20 C.F.R. § 725.479 (entitled “Finality of decisions and orders”)], filing a request for modification is not identified as a procedure that affects the finality of a Decision and Order. Indeed, 20 C.F.R. § 725.480 provides: “A party who is dissatisfied with a decision and order which has become final in accordance with [§ ] 725.479 may request a modification of the decision and order if the conditions set forth in [§ ] 725.310 are met.” 20 C.F.R. § 725.480 (emphasis supplied). Thus, pursuant to [§ ] 725.480, modification requests do not alter the finality of a Decision and Order, but rather pertain to Decision and Orders that have become final. The Board’s Decision and Order affirming [the ALJ’s 1993] award of benefits in [Mr. Sharpe’s] claim became final on November 23, 2004. See 20 C.F.R. § 802.406. Since [Westmoreland] did not appeal that decision, it cannot now be *332 heard to question the [finality] of [the ALJ’s] decision.
2009 BRB Decision 15. Additionally, we agree with the BRB that Westmoreland has no cause to contend that, in light of the new evidence proffered in support of its Modification Request, it did not have a full and fair opportunity to litigate the complicated pneumoconiosis issue in the prior proceeding. See id. (“The existence of new evidence is irrelevant to the issue of whether [Westmoreland] was provided a full and fair opportunity to present the evidence it had at that time.”). Finally, we reject Westmoreland’s bare and puzzling contention that its Modification Request and new evidence somehow constitute previously unavailable “procedural opportunities ... that could readily cause a different result.” See Parklane Hosiery Co., 439 U.S. at 331, 99 S.Ct. 645. As such, we conclude that the BRB appropriately applied the doctrine of offensive nonmutual collateral estoppel in approving Mrs. Sharpe’s survivor’s claim.
rv.
Pursuant to the foregoing, we deny Westmoreland Coal Company’s petition for review and affirm the 2009 BRB Decision denying modification of William Sharpe’s living miner’s benefits award and granting survivor’s benefits to his widow Mae Ann Sharpe.

PETITION FOR REVIEW DENIED.

. Section 921 of Title 33 is a provision of the Longshore and Harbor Workers’ Compensation Act incorporated into the Black Lung Benefits Act by 30 U.S.C. § 932(a). Another such provision, 33 U.S.C. § 922, authorizes modification of benefits awards and is discussed infra.

. Notably, because the Sharpes’ claims were filed in 1989 and 2000, they are not affected by the Patient Protection and Affordable Care Act’s recent amendments to the Black Lung Benefits Act, which apply only to claims filed after January 1, 2005. See Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 1556, 124 Stat. 119, 260 (2010). As amended, the Black Lung Benefits Act now provides that "[i]n no case shall the eligible survivors of a miner who was determined to be eligible to receive benefits under this title at the time of his or her death be required to file a new claim for benefits, or refile or *321 otherwise revalidate the claim of such miner.” 30 U.S.C. § 932(l); see W. Va. CWP Fund v. Stacy, 671 F.3d 378, 381 (4th Cir.2011) (recognizing that, under amended § 932(Z), "an eligible survivor of a miner who was receiving benefits at the time of his death is automatically entitled to survivors’ benefits without having to establish that the miner’s death was due to pneumoconiosis”).

. The provisions discussed herein of Parts 718 and 725 of Title 20 of the Code of Federal Regulations were in effect until January 2001, unless otherwise noted.

. Under the applicable regulations, "[i]n the case of an award which is decreased, any payment made in excess of the decreased rate shall be subject to collection or offset.” 20 C.F.R. § 725.310(d). The current version of that provision, however, precludes recovery of payments made on later-terminated awards.

. Because our Sharpe I opinion remanded with directions to apply the proper legal standard, we were not required to reach Mrs. Sharpe's other contentions of error, including that the 2004 ALJ Decision incorrectly determined that the 1993 ALJ Decision was premised on a mistake of fact. See Sharpe I, 495 F.3d at 134 n. 16. Nonetheless, we instructed that, on remand, the ALJ should examine the initial finding of complicated pneumoconiosis without engaging in improper "head counting” of expert medical opinions (as he may have done in the 2004 ALJ Decision), and should also more thoroughly explain why he credited an expert opinion in 2004 that he had accorded no weight in 2002. Id.

. Having rejected Mr. Sharpe's living miner’s claim, the ALJ recognized that he had no cause to decide whether Mrs. Sharpe could rely on offensive nonmutual collateral estoppel in support of her survivor’s claim. See 2008 ALJ Decision 18. Nevertheless, the ALJ expounded on why he believed that such doctrine, as used by the widow in Collins to prove simple pneumoconiosis, should not be available for proof of complicated pneumoconiosis. Id. at 11 n.15 (explaining, inter alia, that while the Collins claimant was yet required to " ‘establish[ ] that [simple] pneumoconiosis hastened her husband’s death,' ” "nonmutual offensive collateral estoppel would serve to automatically establish that [complicated] pneumoconiosis was a substantial cause of the miner's death by operation of the irrebutable [sic] presumption in § 718.304” (quoting Collins, 468 F.3d at 222)).

. One member of the BRB's three-judge panel dissented, explaining that he would affirm the 2008 ALJ Decision "[b]ecause the administrative law judge considered each of the [justice under the act’] factors identified [in Sharpe I] and rendered findings that are rational and supported by substantial evidence.” 2009 BRB Decision 19 (Roy P. Smith, J., dissenting). Westmoreland subsequently moved for reconsideration en banc of the 2009 BRB Decision, which motion was denied on a 3-2 vote by order of October 27, 2010. Accord *327 ingly, Westmoreland filed its petition for review in this Court.

. The current version of 20 C.F.R. § 725.310(a) replaces "the deputy commissioner” with "the district director.” Westmoreland’s Modification Request was first considered — and denied — by the district director. See 2009 BRB Decision 3 (explaining that district director's adverse decision prompted Westmoreland to request ALJ hearing).

. To the extent that Sharpe I has been interpreted to compel the Director's position on futility, it has been misread.

. The BRB was right not to question the ALJ’s refusal to penalize Westmoreland solely because the new evidence may have been available long before the Modification Request was made. See Banks v. Chi. Grain Trimmers Ass’n, 390 U.S. 459, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1968). There were grounds, however, for the BRB to criticize the ALJ’s finding that only Westmoreland was prejudiced by the seven-year delay between the 1993 ALJ Decision and the 2000 Modification Request. For example, Mrs. Sharpe indicates that, as a result of Westmoreland’s long silence, “no autopsy had ever been obtained.” Br. of Resp't 21.

. In light of our disposition of the modification issue, we need not assess and review the BRB's rejection of the ALJ’s ruling that the 1993 complicated pneumoconiosis finding was premised on a mistake of fact. See 2009 BRB Decision 9-12. Were we to do so, however, we would agree with the BRB.
That being said, our handling of the accuracy question, and all of the "justice under the act” factors, has drawn the reproach of our distinguished dissenting colleague. The dissent principally criticizes us for ignoring accuracy’s general prominence in the modification analysis and for failing to accord deference to the ALJ’s factual findings — including, for example, the so-called "finding” that Westmoreland appropriately " used the available legal means to attempt to protect and obtain justice for itself.’ ” See post at 334 (quoting 2008 ALJ Decision 10). The dissent’s criticisms are belied by a fair reading of our decision today. We readily and repeatedly acknowledge herein the modification statute's strong interest in accuracy, but agree with the BRB that the ALJ abused his discretion by ruling that accuracy trumped all other considerations in this case. In so doing, we defer to the ALJ’s findings of fact— such as his finding that Westmoreland filed its Modification Request to preclude operation of offensive non-mutual collateral estoppel in Mrs. Sharpe’s survivor’s claim — but not to the ALJ's conclusions of law — e.g., his conclusion (rather than "finding”) that Westmoreland’s motive was a proper one. We are thus confident that our decision fully comports with controlling legal principles, including the applicable standard of review.