**Mae Ann SHARPE, Widow of William A. Sharpe, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS; Westmoreland Coal Company, Incorporated, Respondents.**

No. 05–1896.

United States Court of Appeals, Fourth Circuit.

Argued: Jan. 30, 2007.

Decided: July 17, 2007.

---

**ARGUED:** John A. Bednarz, Jr., Wilkes–Barre, Pennsylvania, for Petitioner. William Steele Mattingly, Jackson & Kelly, P.L.L.C., Morgantown, West Virginia, for Respondents. **ON BRIEF:** Woodrow E. Turner, Jackson & Kelly, P.L.L.C., Morgantown, West Virginia, for Respondent Westmoreland Coal Company; Jonathan L. Snare, Acting Solicitor of Labor, Patricia M. Nece, for Appellate Litigation, Barry H. Joyner, Attorney, Office of the Solicitor, United States Department of Labor, Washington, DC, for Respondent Director, Office of Workers' Compensation Programs.

Before TRAXLER and KING, Circuit Judges, and JAMES R. SPENCER, Chief United States District Judge for the Eastern District of Virginia, sitting by designation.

Petition for review granted; order vacated and remanded by published opinion. Judge KING wrote the opinion, in which Judge TRAXLER and Judge SPENCER joined.

## OPINION

KING, Circuit Judge.

Mae Ann Sharpe, the widow of deceased coal miner William A. Sharpe, petitions for review of the adverse 2005 Decision and Order of the Benefits Review Board (the "2005 BRB Decision"), affirming the 2004 Decision and Order of an administrative law judge (the "2004 ALJ Decision").[1] In the 2004 ALJ Decision, the ALJ retroactively denied Mr. Sharpe's 1989 claim for black lung lifetime disability benefits (the "living miner's claim"), which had been approved eleven years earlier. Benefits had been paid to Mr. Sharpe, however, until his death in April 2000. The ALJ also denied Mrs. Sharpe's related survivor's claim for black lung benefits (the "survivor's claim"), filed on April 26, 2000, a week after Mr. Sharpe's death. The ALJ's denial of those claims resulted from a modification request filed by Westmoreland Coal Company on June 15, 2000, seeking to reopen and alter Mr. Sharpe's 1993 award of benefits (the "Modification Request"). In her petition for review, Mrs. Sharpe contends, inter alia, that the adjudicators erred in granting the Modification Request on Mr. Sharpe's living miner's claim.[2]

---

1. The Director of the Office of Workers' Compensation Programs and Westmoreland Coal Company are the respondents in this proceeding.

2. As explained below, a modification under the Longshoreman's Act, made applicable to the Black Lung Benefits Act by 30 U.S.C. § 932(a), should only be granted where doing so would "render justice under the act." *See Banks v. Chi. Grain Trimmers Ass'n,* 390 U.S. 459, 464, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1968).

As explained below, we agree that the ALJ erred in granting the Modification Request (and that the BRB consequently erred in affirming it), in that he failed to exercise the discretion accorded to him with respect to such proceedings.[3] In so ruling, the ALJ failed to assess whether reopening the case would render justice under the Act, in light of the various factors pertinent to a proper modification request ruling, including accuracy, the requesting party's diligence and motive, and the potential futility of a favorable modification award. We therefore vacate and remand for such further proceedings as may be appropriate.

## I.

William Sharpe worked for thirty-nine years in the coal mines of southern West Virginia and western Virginia, and was employed by Westmoreland Coal Company for at least eight of those years. Mr. Sharpe last worked for Westmoreland as a manager in and around underground coal mines, and he retired in 1988. Mr. Sharpe had previously worked in various mining operations as a general superintendent, a foreman, a section foreman, a rock driller, and a coal loader. In March 1989, Mr. Sharpe filed his claim for living miner's

benefits, maintaining that he suffered from black lung disease, or pneumoconiosis.[4] An ALJ denied Mr. Sharpe's living miner's claim on May 20, 1991, concluding that he had failed to establish total disability due to pneumoconiosis. Mr. Sharpe appealed that decision to the BRB, which, on March 29, 1993, affirmed the ALJ in part, but vacated the finding that Mr. Sharpe did not suffer from complicated coal workers' pneumoconiosis. The living miner's claim was then remanded to a different ALJ, who, after finding that Mr. Sharpe suffered from complicated pneumoconiosis, approved the claim and awarded black lung benefits to him on August 26, 1993 (the "1993 ALJ Decision").[5] Westmoreland appealed the 1993 ALJ Decision to the BRB, which affirmed the award of benefits on September 28, 1994 (the "1994 BRB Decision"). Significantly, Westmoreland did not pursue its right to seek judicial review of the 1994 BRB Decision.[6] Mr. Sharpe thus received black lung benefits under his living miner's claim from 1989 until his death on April 18, 2000.

After her husband died, Mrs. Sharpe promptly filed, on April 26, 2000, her survivor's benefits claim with the Director of the Office of Workers' Compensation Programs (the "Director").[7] On June 15,

---

3. The parties agree that an ALJ's decision to modify an award under 20 C.F.R. § 725.310 is a discretionary one. *See Betty B Coal Co. v. Dir., OWCP,* 194 F.3d 491, 501 (4th Cir.1999) ("[W]e have no quarrel with encouraging ALJs to exercise their discretion to reopen when doing this would promote justice (and we would not hesitate to correct abuses of that discretion).").

4. Living miner's benefits are authorized under the Black Lung Benefits Act for coal miners totally disabled due to pneumoconiosis. *See* 30 U.S.C. § 922(a)(1).

5. The 1993 ALJ Decision awarded Mr. Sharpe black lung benefits retroactive to the initial filing of his living miner's claim in 1989.

6. Westmoreland had the right to seek judicial review of the 1994 BRB Decision in this Court. *See* 33 U.S.C. § 921(c) ("Any person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred....").

7. Black lung benefits are authorized for eligible survivors upon the death of a coal miner due to pneumoconiosis. *See* 30 U.S.C. § 922(a)(2) (providing that coal miner's widow may receive benefits if husband's death was due to pneumoconiosis).

2000, nearly two months after Mr. Sharpe died—and nearly seven years after the 1994 BRB Decision—Westmoreland filed its Modification Request on Mr. Sharpe's living miner's claim, pursuant to 20 C.F.R. § 725.310. In the Modification Request, Westmoreland alleged that Mr. Sharpe had never suffered from complicated pneumoconiosis and that a mistake of fact had been made in that regard in the 1993 ALJ Decision.[8] On November 13, 2000, the Director determined, after conducting an informal conference on the Modification Request, that no such mistake of fact had been made in the 1993 ALJ Decision, and thus denied modification (the "2000 Director's Decision"). *See* J.A. 33.[9] On November 30, 2000, Westmoreland rejected the 2000 Director's Decision, and the Modification Request was referred to the Office of Administrative Law Judges. *See id.* at 39. By decision dated July 23, 2002, the ALJ also ruled against Westmoreland, concluding that it had failed to present sufficient new evidence to establish that the 1993 ALJ Decision—which found that Mr. Sharpe suffered from complicated pneumoconiosis—was in error (the "2002 ALJ Decision"). The ALJ thus denied the Modification Request and awarded benefits to Mrs. Sharpe on her survivor's claim. Neither the 2000 Director's Decision nor the 2002 ALJ Decision assessed the factors, other than factual accuracy, that are pertinent to such a ruling, and both decisions concluded that no mistake of fact had

been made in 1993. Westmoreland appealed the 2002 ALJ Decision to the BRB, which, by decision of August 22, 2003 (the "2003 BRB Decision"), vacated the 2002 ALJ Decision. The 2003 BRB Decision ruled that the ALJ could not rely on any findings of fact made in the 1993 ALJ Decision, and directed that, on remand, he assess de novo the previously submitted evidence as well as the newly submitted evidence.

On remand, the ALJ, by decision of April 30, 2004 (the "2004 ALJ Decision"), reversed himself and concluded that a mistake of fact had been made when the 1993 ALJ Decision ruled that Mr. Sharpe suffered from complicated pneumoconiosis.[10] The ALJ thus modified Mr. Sharpe's living miner's claim (more than four years after his death) and denied both that claim and Mrs. Sharpe's survivor's claim. The ALJ again only assessed the factual accuracy of the complicated pneumoconiosis finding and failed to evaluate the other pertinent factors. In so doing, he failed to adhere to the regulatory mandate, found in 20 C.F.R. § 725.310, that a proper assessment of a modification request is committed to the sound discretion of the adjudicator. The BRB affirmed the 2004 ALJ Decision by its decision of June 13, 2005 (the "2005 BRB Decision"), likewise assuming that Westmoreland had a right to modification of the living miner's claim upon simply establishing a mistake of fact. Thus, none of the decisions on the Modifi-

---

8. The Modification Request is not contained in the administrative record filed with Mrs. Sharpe's petition for review. We derive its allegations from the references made in the various administrative decisions.

9. Citations to "J.A. ___" refer to the Joint Appendix filed by the parties in this proceeding.

10. The alleged mistake of fact relating to the living miner's claim was highly disputed, and

essentially involved a determination by the ALJ as to which doctors to credit. The 1993 ALJ Decision had credited the opinions of three doctors who had diagnosed Mr. Sharpe with complicated pneumoconiosis. After first affirming this finding by his 2002 ALJ Decision, the ALJ determined, in his 2004 ALJ Decision, that a mistake of fact had been made, and he then credited the opinion of a single doctor (Dr. Fino) who had diagnosed Mr. Sharpe with simple pneumoconiosis.

cation Request addressed the fact that Westmoreland waited nearly seven years to file the Request, none questioned Westmoreland's motive in filing it in apparent response to the survivor's claim, and none otherwise addressed whether a reopening of the matter would render justice.[11]

Mrs. Sharpe now seeks our review of the 2005 BRB Decision, contending, inter alia, that the 2004 ALJ Decision erred in granting the Modification Request on Mr. Sharpe's living miner's claim, and that the BRB erred in affirming it. We possess jurisdiction over this matter pursuant to 33 U.S.C. § 921(c).

On January 30, 2007, we heard oral argument on Mrs. Sharpe's petition. By Order of January 31, 2007, we directed the parties to file supplemental briefs addressing, inter alia, what relief (if any) Westmoreland could secure from its Modification Request.[12] In their supplemental briefs, the Director and Mrs. Sharpe maintain that the Modification Request is futile, in that Westmoreland cannot recover any overpayments made to Mr. Sharpe because no estate ever existed for him, and, in any event, any collection action against such an estate would be time barred. *See* Fed. Resp't Supp. Br. 7–8 ("Absent an estate, there is no opposing party on the miner's claim from which [Westmoreland] could seek repayment of benefits. Thus, it is not apparent that the employer has established its modification petition is not moot."). Westmoreland also conceded that it has never sought to collect any overpayment from Mr. Sharpe's estate.

## II.

We review for abuse of discretion a decision to grant a modification request on a living miner's claim. *See O'Loughlin v. Parker*, 163 F.2d 1011, 1013 (4th Cir. 1947); *see also Betty B Coal Co. v. Dir., OWCP*, 194 F.3d 491, 501 (4th Cir.1999) ("[W]e have no quarrel with encouraging ALJs to exercise their discretion to reopen when doing this would promote justice (and we would not hesitate to correct abuses of that discretion)."). Such an exercise of discretion by an ALJ, however, "is not boundless and subject to automatic affirmance." *See Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir.1999). In reviewing a discretionary administrative decision, we are obliged to assess the full record and the reasons assigned, and we will reverse if the decision was "guided by erroneous legal principles," or if the adjudicator "committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *See id.* (internal quotation marks omitted). An abuse of discretion can flow from "a failure or refusal, either express or implicit, actually to exercise discretion, deciding instead as if by general rule, or even arbitrarily, as if neither by rule nor discretion." *James v. Jacobson*, 6 F.3d 233, 239 (4th Cir.1993).

---

11. The administrative decisions most pertinent to this proceeding are, in summary, (1) the 1993 BRB Decision, which found that Mr. Sharpe suffered from complicated pneumoconiosis and awarded benefits on the living miner's claim; (2) the 2004 ALJ Decision, which granted the Modification Request on the living miner's claim, and which denied both the living miner's and survivor's claims; and (3) the 2005 BRB Decision (of which Mrs. Sharpe seeks review) affirming the 2004 ALJ Decision.

12. Specifically, we asked the parties to address the following: "(1) [t]he applicability and impact of *Collins v. Pond Creek Mining Co.*, 468 F.3d 213 (4th Cir.2006) in this appeal; and (2)[t]he relief (if any) Westmoreland might secure against the deceased miner, William Sharpe, or benefits previously paid to him, from a modification of his 1994 award." *Sharpe v. Dir., OWCP*, No. 05–1896 (4th Cir. Jan. 31, 2007).

## III.

## A.

Before assessing Mrs. Sharpe's primary contention on the Modification Request, it is appropriate to briefly review the applicable legal principles governing efforts to seek modification of black lung benefits awards. The modification of such awards under the Black Lung Benefits Act (the "BLBA") is governed by § 22 of the Longshoremen's Act. *See* 30 U.S.C. § 932(a) (making Longshoremen's Act, with exceptions not relevant here, applicable to black lung benefits determinations). At the heart of Mrs. Sharpe's petition for review is 20 C.F.R. § 725.310, the regulation upon which Westmoreland relied in June 2000 in submitting its Modification Request on Mr. Sharpe's 1993 living miner's award. That provision specifies, in pertinent part, that

> [u]pon the request of any party on grounds of a change in conditions or because of a mistake in a determination of fact, the district director *may* ... reconsider the terms of an award or denial of benefits.

20 C.F.R. § 725.310(a) (2000) (emphasis added).[13] Under the regulations, a modification proceeding must be initiated before the Director. *See id.* § 725.310(b) (2000) ("Modification proceedings shall not be initiated before an administrative law judge or the Benefits Review Board."); *Lee v. Consol. Coal Co.*, 843 F.2d 159, 162–63 (4th Cir.1988) (holding that petitions for modification under BLBA must be filed with Director rather than ALJ). When a modification request is made, the Director is obliged to review it on the basis of all evidence submitted, and he is entitled to

schedule a conference, issue a proposed decision and order, forward the request to an ALJ for a hearing, or take other appropriate action. *See* 20 C.F.R. § 725.415 (2000). If a conference is held, the Director, at its conclusion, must prepare and send to the parties a summary of the conference, along with his recommendation. *Id.* § 725.417(c) (2000). Any party may reject, in whole or in part, the Director's recommendation, *id.* § 725.417(d) (2000), and then request that the Director refer the claim to the Office of Administrative Law Judges, *id.* § 725.419(a).

█ Importantly, the modification of a black lung claim does not necessarily flow from a finding that a mistake was made on an earlier determination of fact. *See Banks v. Chi. Grain Trimmers Ass'n*, 390 U.S. 459, 464, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1968) (observing purpose of modification under Longshoreman's Act, applicable to BLBA, is to "render justice under the act" (internal quotation marks omitted)); *Jessee v. Dir., OWCP*, 5 F.3d 723, 725 (4th Cir.1993) (observing that Director "*may, if he so chooses*, modify the final order on the claim" upon finding mistake of fact) (emphasis added); *see also Old Ben Coal Co. v. Dir., OWCP*, 292 F.3d 533, 547 (7th Cir.2002) (recognizing that modification should not be automatic); *McCord v. Cephas*, 532 F.2d 1377, 1380 (D.C.Cir.1976) ("[T]here is no reason to think that there should be an automatic reopening simply because the [Director or ALJ] found a mistake in a determination of fact.").

█ If a modification request is granted by either the Director or an ALJ, an order may be issued terminating, continuing, reinstating, increasing, or decreasing benefit

---

**13.** The most recent version of § 725.310, as well as §§ 725.415 and .417, effective January 19, 2001, apply prospectively only, and are thus inapplicable to this case, as Mr. Sharpe applied for benefits in 1989 and was awarded

benefits in 1993. *See* 20 C.F.R. § 725.2(c) (limiting application of those sections (among others) *as amended to claims initiated on or after January 19, 2001*).

payments. *See* 20 C.F.R. § 725.310(d) (2000).[14] The regulations also provide that, if an over-paid beneficiary dies before an appropriate adjustment is completed, the overpayment can be recovered from the estate of the beneficiary or by withholding amounts due the estate. *See id.* § 725.540(d). Thus, under the circumstances here, Westmoreland is unable to seek recovery from Mrs. Sharpe for any overpayments made under Mr. Sharpe's living miner's claim. Consequently, Westmoreland is only entitled to seek recovery of overpayments of benefits from 1989 until Mr. Sharpe's death in 2000, if any is to be had, from Mr. Sharpe's estate.

### B.

### 1.

Mrs. Sharpe contends that the ALJ erred in the 2004 ALJ Decision when he granted the Modification Request. As we have pointed out, the modification of a black lung award or denial does not automatically flow from a mistake in an earlier determination of fact. *See Banks,* 390 U.S. at 464, 88 S.Ct. 1140 (holding that modification should be made only where doing so will "render justice under the act"); *accord Old Ben Coal Co.,* 292 F.3d at 547; *Jessee,* 5 F.3d at 725; *McCord,* 532 F.2d at 1380. Of importance in this proceeding, none of the administrative decisions rendered in connection with the Modification Request assessed all the factors relevant to an exercise of sound discretion. Instead, they addressed only one—whether a mistake of fact had been made in the 1993 ALJ Decision. Because the 2004 ALJ Decision (affirmed by the

2005 BRB Decision) found that a mistake of fact had been made, the adjudicators were obliged to exercise their sound discretion, pursuant to § 725.310(a) of the regulations, by evaluating the Modification Request in light of whether reopening the case would render justice under the Act. Mrs. Sharpe contends that they erred in failing to do so, and in concluding that a mistake of fact had been made in the 1993 ALJ Decision.

As explained below, it is apparent, in the context of their handling of the Modification Request, that the ALJ and BRB were "guided by erroneous legal principles," *see Westberry v. Gislaved Gummi AB,* 178 F.3d 257, 261 (4th Cir.1999), and failed "actually to exercise discretion, deciding instead as if by general rule," *see James v. Jacobson,* 6 F.3d 233, 239 (4th Cir.1993). That is, they erroneously assumed that Westmoreland was entitled to modification of the 1993 living miner's award upon merely establishing that a mistake of fact was made seven years earlier. We are thus obliged to vacate and remand for a proper assessment of the Modification Request.

### 2.

In exercising his discretion on a modification request, an ALJ should weigh any factors that are pertinent in the circumstances as well as the accuracy of the prior decision. Our sister circuits have provided some guidance in this regard, articulating several considerations that may be relevant to the adjudication of a modification request. These include not only accuracy, but also the requesting party's diligence and motive, and whether a

---

14. The statutory authority for an effort to recover overpayments made prior to a modification ruling is set forth at 30 U.S.C. § 923(b). Section 923 incorporates the overpayment provision in the Social Security Act, found at 42 U.S.C. § 404. Section 404 provides that overpayments must be recouped from an overpaid individual or his estate, unless the recipient was without fault and recovery would defeat the purpose of the Act. *See* 42 U.S.C. § 404(a)(1)(A), (b).

favorable ruling would nonetheless be futile. *See, e.g., Old Ben Coal Co. v. Dir., OWCP*, 292 F.3d at 547 (7th Cir.2002).

■ For example, the Seventh Circuit has recognized that the diligence of the party seeking modification should be considered in a modification determination. *See Old Ben Coal Co.*, 292 F.3d at 547 ("[T]he ALJ will no doubt need to take into consideration many factors including the diligence of the parties."); *see also McCord v. Cephas*, 532 F.2d 1377, 1378 (D.C.Cir.1976) (remanding for assessment of whether reopening would "render justice under the act" in light of employer's four-plus years delay in pursuing modification). The requesting party's motive may be an appropriate consideration in adjudicating a modification request, in that "if the party's purpose in filing a modification is to thwart a claimant's good faith claim or an employer's good faith defense, the remedial purpose of the statute is no longer served." *See Old Ben Coal Co.*, 292 F.3d at 546. Finally, although administrative adjudications do not constitute Article III proceedings to which the case or controversy mandate applies, *see Ecee, Inc. v. FERC*, 645 F.2d 339, 349 (5th Cir.1981), a showing of futility may be pertinent to the proper handling of a modification request. *Cf. Old Ben Coal Co.*, 292 F.3d at 550 (Wood, J., dissenting) (observing that possibility employer might be permitted to recoup overpayment from estate notwithstanding state probate law was "enough—barely—to save the case from nonjusticiability").

We see the foregoing factors—diligence, motive, and futility—as potentially relevant to whether a modification request should be granted.[15] And in this situation, an objective adjudicator could readily identify significant factual issues that are pertinent to a proper evaluation of Westmoreland's Modification Request. For example:

- Why did Westmoreland wait to seek modification under § 725.310(a) until June 2000, two months after Mr. Sharpe's death, and nearly seven years after the BRB had affirmed his living miner's award (a decision that Westmoreland never appealed)?
- Should Westmoreland's motive in seeking modification be deemed suspect?
- Was the Modification Request part and parcel of Westmoreland's defense to Mrs. Sharpe's claim for survivor's benefits, which had been filed less than two months earlier?
- Is the Modification Request futile or moot, in that no overpayments made to Mr. Sharpe could be recovered?
- Is the Modification Request akin to a request for an advisory opinion, in that a favorable resolution thereof will have no impact on the living miner's claim?

Of course, Westmoreland may be able to satisfactorily respond to these issues, and make a compelling showing that they should be resolved in its favor. If Westmoreland is able to do so, such a showing would be entitled to appropriate consideration by the adjudicators.

### 3.

■ Put simply, the ALJ and the BRB, in treating the Modification Request

---

**15.** In addition to the factors spelled out above, finality interests may sometimes be relevant to a proper modification request ruling. We have recognized, however, that "the 'principle of finality' just does not apply to Longshore Act and black lung claims as it does in ordinary lawsuits." *Jessee v. Dir.,* *OWCP*, 5 F.3d 723, 725 (4th Cir.1993) (citing *Banks v. Chi. Grain Trimmers Ass'n*, 390 U.S. 459, 461–65, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1968)). We have never definitively decided, however, that an ALJ should not weigh finality interests when ruling on a modification request. *See id.*

**134**

as a matter of right upon establishing a mistake of fact, and in failing to exercise the discretion accorded to them under 20 C.F.R. § 725.310(a), were guided by "erroneous legal principles" in ruling thereon. *See Westberry,* 178 F.3d at 261. Such a misapprehension of the applicable legal standard is, by definition, an abuse of discretion. *See id.* On remand, a proper exercise of discretion should lead the adjudicators to assess, in addition to the need for accuracy, the diligence and motive of Westmoreland in seeking modification of Mr. Sharpe's living miner's award, the possible futility of any such modification, and other factors that may bear on whether approval of the Modification Request will "render justice under the Act." [16]

### IV.

Pursuant to the foregoing, we grant Mrs. Sharpe's petition for review, vacate the 2005 BRB Decision, and remand for further consideration of the Modification Request and for such additional proceedings as may be appropriate.[17]

*PETITION FOR REVIEW GRANTED; ORDER VACATED AND REMANDED*

---

**16.** Mrs. Sharpe also contends, inter alia, that the 2004 ALJ Decision erred in determining that the 1994 ALJ Decision was premised on a mistake of fact. In that regard, we note that the ALJ's conclusion in the 2004 ALJ Decision that Mr. Sharpe did not suffer from complicated pneumoconiosis may, in part, have been the product of head counting. That is, the ALJ concluded that Mr. Sharpe did not have complicated pneumoconiosis because more experts reading the various x-rays rejected a diagnosis of complicated pneumoconiosis than made such a diagnosis. We have held that it is error for determinations about the existence of pneumoconiosis to be based on a numerical counting of expert opinions. *See Sterling Smokeless Coal Co. v. Akers,* 131 F.3d

438, 440–41 (4th Cir.1997). On remand, the ALJ should determine whether the initial finding of complicated pneumoconiosis was mistaken without resort to a tallying of the expert opinions. On remand, the ALJ should also more thoroughly explain why he found the opinion of Dr. Fino to be credible and entitled to great weight, given that the ALJ in his 2002 ALJ Decision had concluded that Dr. Fino's opinion should be given no weight.

**17.** In view of our disposition of this matter, we need not reach and address the other contentions raised by Mrs. Sharpe in her petition for review.