AGEE, Circuit Judge,
dissenting:
I respectfully dissent from the majority opinion. It errs, in my view, by failing to follow established precedent and by improperly substituting the judgment of the appellate court for that of the administrative law judge (“ALJ”).
I.
At the outset, it is critical to set forth the proper standard of review. “We review for abuse of discretion a decision to grant a modification request on a living miner’s claim.” Sharpe v. Dir., OWCP, 495 F.3d 125, 130 (4th Cir.2007) (“Sharpe /”). The majority correctly states that a modification decision can be reversed based on a finding of abuse of discretion where it “was guided by erroneous legal principles, or if the adjudicator committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.” Ante at 326-27 (quoting Sharpe I, 495 F.3d at 130 (internal quotation marks omitted)).
However, when an appellate court reviews the decision of an ALJ, we must be mindful of the “limited” scope of our judicial involvement. See Ceres Marine Terminals, Inc. v. Green, 656 F.3d 235, 240 (4th Cir.2011). As a panel of this court recently explained: *333 Harman Mining Co. v. Dir., OWCP, 678 F.3d 305, 310 (4th Cir.2012) (emphasis added). Thus, except as to matters of law, our review of the administrative record is highly circumscribed.
*332 As in all agency cases, we must be careful not to substitute our judgment for that of the ALJ. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990) (“Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence.”). Because the ALJ is the trier of fact, we “defer to the ALJ’s evaluation of the proper weight to accord conflicting medical opinions.” Stiltner v. Island Creek Coal Co., 86 F.3d 337, 342 (4th Cir.1996). As long as substantial evidence supports an ALJ’s findings, “[w]e must sustain the ALJ’s decision, even if we disagree with it.” Smith v. Chater, 99 F.3d 635, 637-38 (4th Cir.1996). We review the legal conclusions of the Board and the ALJ de novo. Island Creek Coal Co. v. Compton, 211 F.3d 203, 208 (4th Cir.2000).
*333 Furthermore, and as the majority rightly notes, when we review an order of the Benefits Review Board (“BRB”) reversing the ALJ, we must “ ‘ensure the BRB’s decision adhered to its statutory standard of review.’ ” Ante at 327 (quoting Dehue Coal Co. v. Ballard, 65 F.3d 1189, 1193 (4th Cir.1995)). By statute, the “findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole.” 33 U.S.C. § 921(b)(3) (emphasis added). The “substantial evidence” standard is not a particularly difficult bar to meet as it is “more than a scintilla but less than a preponderance.” Ceres Marine Terminals, 656 F.3d at 239 (quotation marks and citation omitted). And in reviewing whether substantial evidence supports the ALJ’s ruling, we and the BRB must give “[d]eference ... to the fact-finder’s inferences and credibility assessments[.]” Id. at 240. Thus, to affirm the BRB’s reversal of the ALJ, we must agree with it that the ALJ’s factual findings are unsupported by more than a scintilla of evidence. As the cases make clear, this bar is set as it is to prevent interference in the ALJ’s statutory exercise of discretion by either the BRB or this Court.
Our highly deferential standard of review is significant in two respects. First, in the 2008 order, the ALJ made detailed factual findings with respect to whether William Sharpe (“Mr. Sharpe”) suffered from complicated pneumoconiosis. As more fully explained below, these findings should be the baseline, if not altogether dispositive, of our appellate inquiry. To disturb the ALJ’s findings with respect to the medical facts underlying the modification request is to ignore and exceed our limited judicial role.
Second, as Judge Smith noted in his dissent from the BRB’s order reversing the ALJ, “the [ALJ] addressed each of [the factors identified in Sharpe I] at length in his Decision and Order and made findings that are rational and supported by substantial evidence.” 2009 BRB Decision at 18 (Smith, J., dissenting). It is simply not our role to second guess the judgment of the ALJ when weighing factors such as the ALJ considered here. See Harman Mining Co., 678 F.3d at 310 (reviewing the ALJ “to assess whether substantial evidence supports the factual findings of the ALJ and whether the legal conclusions of the ALJ are rational and consistent with applicable law.”) (quotation marks and citation omitted).
The majority, circumventing the discretion afforded by law to the ALJ, cloaks its analysis in the false veil of de novo review, stating, ante at 328, that the BRB properly concluded that the ALJ’s analysis was “guided by erroneous legal principles[.]” The record does not support that conclusion. The ALJ based the decision to grant modification on the factors identified by this Court in Sharpe I; factors that we described as factual in nature. See 495 F.3d at 133 (“And in this situation, an objective adjudicator could readily identify significant factual issues that are pertinent to a proper evaluation of Westmoreland’s Modification Request.”) (emphasis added).
After directing the ALJ to consider, as a factual matter, questions such as “Should Westmoreland’s motive in seeking modification be deemed suspect?” and “Is the Modification Request futile or moot[?]” see id., the majority, apparently dissatisfied with the answers provided by the ALJ, now undertakes de novo review to revisit those answers and provide substitute fac *334 tual answers it would have preferred had it been sitting as the ALJ.
For example, in Sharpe I, the court directed the ALJ to undertake a factual inquiry into Westmoreland’s motive in seeking modification. See id. The ALJ did so, finding as a matter of fact that “Westmoreland simply used the available legal means to attempt to protect and obtain justice for itself.” 2008 ALJ Decision at 10. The majority, however, undertakes its own independent, de novo review of Westmoreland’s motives and reaches the opposite result, finding, ante at 328-29, that Westmoreland’s motive was to “thwart[ ] a good faith claim or defense[.]” The majority’s independent review inappropriately displaces the well settled role of the ALJ in black lung benefit litigation. See Harman Mining Co., 678 F.3d at 310 (“As long as substantial evidence supports an ALJ’s findings, we must sustain the ALJ’s decision, even if we disagree with it.”) (internal quotation marks and alteration omitted).
When the facts, as determined by the ALJ, are reviewed under the correct standard, the ALJ’s decision should be affirmed and the BRB’s decision reversed.
II.
A.
When interpreting § 22 of the Long-shore and Harbor Workers’ Compensation Act (“LHWCA”)[1] 33 U.S.C. § 922, the Supreme Court has directed that we begin with the language of the statute. See Metro. Stevedore Co. v. Rambo, 515 U.S. 291, 295, 115 S.Ct. 2144, 132 L.Ed.2d 226 (1995). The statute provides that:
Upon his own initiative, or upon the application of any party in interest ..., on the ground of a change in conditions or because of a mistake in a determination of fact by the deputy commissioner, the deputy commissioner may, at any time prior to one year after the date of the last payment of compensation, whether or not a compensation order has been issued, or at any time prior to one year after the rejection of a claim, review a compensation case ... and ... issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation.
33 U.S.C. § 922. The statute itself sets forth two grounds upon which a modification request should be granted: “on the ground of a change in conditions” and “because of a mistake in a determination of fact.” In addition, the statutory text sets forth only one limitation: the one year period from either the date of the last payment of compensation or the date of the rejection of a claim.. Other than this express limitation, there is simply no other textual limitation cabining the discretion of the ALJ to grant modification in accordance with the statute.
Of course, we do not read the statute in a vacuum. The Supreme Court has embossed § 922 with a gloss based on the legislative history of that statute. The Court noted that the scope of the modification statute was expanded in 1934 to “broaden the grounds on which a deputy commissioner can modify an award when changed conditions or a mistake in a determination of fact makes such modification desirable in order to render justice under the act.” O’Keeffe v. Aerojet-General Shipyards, Inc., 404 U.S. 254, 255, 92 S.Ct. 405, 30 L.Ed.2d 424 (1971) (per curiam) *335 (quoting S.Rep. No. 588, 73d Cong., 2d Sess., 3-4 (1934)) (internal alterations and quotation marks omitted).
The ultimate guidepost for our legal analysis, therefore, is, what constitutes “justice under the Act”? The majority begins to answer this query by reference to the “stated purpose” of the Black Lung Benefits Act, which is
to provide benefits ... to coal miners who are totally disabled due to pneumoconiosis and to the surviving dependents of miners whose death was due to such disease; and to ensure that in the future adequate benefits are provided to coal miners and their dependents in the event of their death or total disability due to pneumoconiosis.
Ante at 327-28 (quoting 30 U.S.C. § 901(a)). It is of course true that the purpose of the Black Lung Benefits Act is to ensure that coal miners who actually suffer from black lung disease are compensated. And, as a corollary to this purpose, to provide that when a coal miner dies from black lung disease his dependents receive derivative benefits. However, as with any statutory grant of rights not accorded at common law, only those who actually qualify as a recipient of that right come within its purview. As the Seventh Circuit aptly stated, “Congress accomplished this goal, in part, by incorporating within the statute a broad reopening provision to ensure the accurate distribution of benefits.” Old Ben Coal Co. v. Dir., OWCP, 292 F.3d 533, 546 (7th Cir.2002) (emphasis added).
Thus, our search for “justice under the Act” should be guided, first and foremost, by the need to ensure accurate benefit distribution. See, e.g., O’Keefe, 404 U.S. at 256, 92 S.Ct. 405 (modification statute provides the deputy commissioner with “broad discretion ... to review factual errors in an effort ‘to render justice under the act’ ”) (emphasis added); Banks v. Chicago Grain Trimmers Ass’n, 390 U.S. 459, 464, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1968) (noting that the purpose of the modification statute was to “allow[] modification where a mistake in a determination of fact makes such modification desirable in order to render justice under the act”) (emphasis added) (internal quotation marks omitted); Old Ben Coal Co., 292 F.3d at 547 (“justice under the Act ... cabins the discretion of the ALJ to keep in mind the basic determination of Congress that accuracy of determination is to be given great weight in all determinations under the Act”) (emphasis added).
Thus, precedent directs that accuracy must be, at the very least, the jumping off point for any discussion of “justice under the act.”[2] As the Seventh Circuit recognized in Old Ben Coal Co. v. Dir., OWCP, however, “justice under the act” is not the same as “the interest of justice” — a standard the court described as “amorphous.” 292 F.3d 533, 547 (7th Cir.2002). Therefore, to the extent that factors other than accuracy are relevant to the ALJ’s decision, they should be considered in light of the stated preference for accuracy in the *336 award of benefits. See id. (“This distinction is not simply one of semantics. The [‘justice under the Act’] formulation cabins the discretion of the ALJ to keep in mind the basic determination of Congress that accuracy of determination is to be given great weight in all determinations under the Act.”).
B.
The mandate of Sharpe I directed the ALJ “to assess, in addition to the need for accuracy, the diligence and motive of Westmoreland in seeking modification ..., the possible futility of modification, ... and other factors that may bear on whether [modification] will ‘render justice under the Act.’ ” 495 F.3d at 134 (emphasis added). Despite Sharpe Fs call for the ALJ to make factual findings related to the accuracy of the initial benefit award, however, the majority simply disregards those findings.
On review of the ALJ’s decision, the majority jettisons any purported concern for accuracy, and focuses only on consideration of Westmoreland’s motive, its diligence, and the alleged futility of modification. While it is true that Sharpe I identified those considerations as “potentially relevant to whether a modification request should be granted,” id. at 133, there is simply no support for the majority’s approach in the case at bar — focusing solely on those factors at the expense of the core Black Lung Benefits Act determinant: accuracy. Indeed, it is telling that in its opinion today, the majority devotes only a few bare sentences by footnote as to whether the ALJ’s decision was correct as to the question of whether Mr. Sharpe suffered from complicated pneumoconiosis. See ante at 330-31 n.11 (declining to review the BRB’s rejection of the ALJ’s conclusion that the 1993 complicated pneumoconiosis ruling was based on a mistake of fact, but nevertheless ruling that “were we to do so, ... we would agree with the BRB.”).[3] I fail to see how a valid analysis of whether modification serves “justice under the act” can be undertaken without first considering whether the benefits award Westmoreland seeks to modify was, in fact, accurate.
The majority’s formulation of “justice under the Act” is therefore fundamentally in error, not for noting that the ALJ should consider factors other than accuracy, but rather for failing to provide any analytical framework for evaluating when and under what circumstances accuracy must give way to other considerations. The majority simply recites the factors of motive, diligence, and futility, reweighs the evidence, and summarily concludes that those factors militate against modification. The majority opinion turns the “justice under the act” standard on its head, rewriting the formulation to reflect the sort of amorphous considerations that Old Ben Coal discussed and rejected.
The majority concludes today, without support from any authority, that motive, futility, and an assumed lack of diligence are so overwhelming in this case that accuracy is irrelevant, notwithstanding that ac *337 curacy is the only consideration identified in the precedent of this court and the Supreme Court as being tied to the purposes of the Black Lung Benefits Act.[4] Even McCord and Old Ben, the only other cases on the Circuit Court of Appeals level to remand a modification attempt based on the conduct of a party, did not go so far as the majority. Rather, those cases rightly recognized that the discretion lies with the ALJ, not the courts, to weigh the relevant factors to determine whether modification renders justice under the act.
C.
Contrary to the majority’s holding, the ALJ in this case applied the proper standard to the modification request and his decision is entitled to deference both from this Court and the BRB.
In my view, the majority wrongly concludes that the ALJ was guided by erroneous legal principles. I do not agree that the ALJ “reinvent[ed] the applicable law,” or failed to faithfully apply the principles set forth in Sharpe I. Ante at 328. On the contrary, a fair assessment of the ALJ’s decision reveals that the opposite is true.
The ALJ began by setting forth the applicable legal standard for review of Westmoreland’s modification request. The ALJ carefully recited the holdings of Sharpe I and Old Ben Coal Co., placing appropriate emphasis on the latter’s pronouncement that the ALJ must “ ‘keep in mind the basic determination that accuracy of determination is to be given great weight in all determinations under the Act.’ ” 2008 ALJ Decision at 5 (quoting Old Ben Coal Co., 292 F.3d at 547).
After discussing several cases on point, the ALJ arrived at the following legal conclusions:
(1) accuracy is the overarching goal of “justice under the Act,” and (2) modification should be barred only where the party seeking it has engaged in the type of conduct that occurred in McCord (refusal to participate in the prior administrative proceedings, or in Kinlaw [v. Stevens Shipping and Terminal Co., 33 BRBS 68 (1999)]) (attempting to overcome earlier litigation mistakes by “retrying” the case).
2008 ALJ Decision at 7.
The majority mischaracterizes this holding, accusing the ALJ of crafting a formulation wherein “modification must automatically be granted if the adjudicator finds (1) a prior mistake of fact and (2) an absence of so-called ‘bad conduct’ by the requesting party.” Ante at 328. But, as *338 the foregoing quote proves, the ALJ did not hold that modification is automatic in those circumstances. Rather, the ALJ simply explained an established point of law: because accuracy is the overarching purpose of the modification statute, modification should be granted where the party requesting modification demonstrates that the ruling sought to be modified was factually incorrect, unless there is a very compelling reason not to grant modification (i.e., to set accuracy aside). The ALJ gave two nonexclusive examples from the case-law, but at no point did the ALJ state a per se rule or limit the scope of analysis in future cases with different facts. Tellingly, the ALJ gave several additional examples of factors that might weigh against modification in an appropriate case (serial petitions, etc.). See 2008 ALJ Decision at 11 n.16. A fair reading of the full text of the ALJ’s opinion shows the majority opinion mischaracterizes its actual holding.
The ALJ’s formulation of “justice under the act” was not guided by erroneous legal principles. To the contrary, it was based on the unassailable legal principle that accuracy is of paramount importance in rendering modification decisions. In this case, it is the majority that arbitrarily alters the “justice under the act” standard to something far removed from the purposes of the Black Lung Benefits Act. The majority’s approach is counterintuitive, asking first whether the party requesting modification has engaged in some manner of egregious conduct (or, as is in the case at bar, benign conduct deemed suspect by the majority), and, only upon answering that question in the negative deems the accuracy of the benefits award to be relevant. Such an approach does not render “justice under the Act.”
Because a proper assessment of the ALJ’s legal conclusions from the established facts shows the ALJ applied the proper legal analysis, I would grant the petition for review and reverse the judgment of the BRB on the foregoing basis alone.
III.
Notwithstanding my objection to the erroneous weight that the majority gives to the “other factors,” the ALJ’s assessment of each factor was correct as a matter of law and supported by substantial evidence. I address each factor in turn.
A. Accuracy
As accuracy is the primary consideration of whether modification renders “justice under the Act,” I begin with a review of the ALJ’s findings that the 1998 benefit award on Mr. Sharpe’s living miner’s claim was based on a mistake of fact because the evidence does not establish complicated pneumoconiosis.
I note at the outset that Mrs. Sharpe has forfeited her challenge to the ALJ’s factual conclusions regarding the 1993 benefit award by failing to raise any argument whatsoever related to that issue in her brief on appeal. “Even appellees waive arguments by failing to brief them.” Roth v. U.S. Dep’t of Justice, 642 F.3d 1161, 1181 (D.C.Cir.2011) (quoting United States v. Ford, 184 F.3d 566, 578 n. 3 (6th Cir.1999); see Mironescu v. Costner, 480 F.3d 664, 677 n. 15 (4th Cir.2007) (citing Federal Rule of Appellate Procedure 28(b) for the proposition that appellees must state their contentions and the reasons for them “at the risk of abandonment of an argument” not presented)) (quotation marks and citation omitted). Despite the centrality in this appeal of the issue of whether the 1993 benefit award was correct, Mrs. Sharpe devotes not one word in her brief to an explanation of why it was so. On *339 that basis alone, I would leave undisturbed the ALJ’s medical findings.
Even ignoring the waiver, the ALJ’s findings are manifestly supported by substantial evidence. The ALJ reviewed the medical evidence in this case twice: once in 2004 and again in 2008 on remand from this Court’s judgment in Sharpe I. In both instances, the ALJ ruled that Mr. Sharpe did not suffer from complicated pneumoconiosis.
The ALJ’s ruling was based on his review of x-ray evidence gathered in 1990, 1992, 1993, and twice in 2001. 2008 ALJ Decision at 14. After discussing the medical opinions that had been issued to date, the ALJ stated the following in support of his determination:
[ I]n considering the x-ray evidence, I find it highly significant that — although pneumoconiosis is a progressive and irreversible disease — all the physicians who provided the 13 interpretations of the post-1989 “readable” films found that these films do not indicate the presence of complicated pneumoconiosis.... All of these physicians are well-qualified to interpret chest x-rays for the presence of pneumoconiosis, as they are either B-readers ..., or dually qualified ----I find that the post-1989 x-ray evidence, which unanimously is contra the presence of complicated pneumoconiosis, outweighs the four complicated pneumoconiosis interpretations of the two 1989 films. In addition, further doubt is cast on the interpretation of complicated pneumoconiosis by the five physicians who found that the April 3, 1989 x-ray does not reveal complicated pneumoconiosis and the six physicians who found that the July 27, 1989 x-ray does not reveal complicated pneumoconiosis.
2008 ALJ Decision at 14 (emphasis in original).
On review, the BRB rejected the ALJ’s assessment, only because the BRB improperly excluded the evidence the ALJ relied upon in concluding that Mr. Sharpe did not suffer from complicated pneumoconiosis. The BRB held that
[ T]he evidence submitted on modification, consisting of x-rays, CT scans, medical records and medical opinions spanning the period from 1990 to the miner’s death in 2000, is of the same sort as the evidence that was available during the miner’s life. Under these circumstances, it is proper to grant survivor’s benefits based on [the] finding made during the miner’s life.
2009 BRB Decision at 11. In excluding clearly reliable evidence that Mr. Sharpe did not suffer from pneumoconiosis, the BRB imposed a requirement, not found in any case or statute, that the ALJ must only consider its version of “highly reliable evidence,” i.e., “autopsy results” in granting a modification. Id. In this respect, the BRB grossly misstated the law and reached a conclusion to ignore evidence not on any proven ground of relevance, but as an arbitrary and capricious act. The cases to have considered the issue are unanimous that there is no limitation on the type of evidence that may justify granting modification. See, e.g., O’Keeffe, 404 U.S. at 256, 92 S.Ct. 405 (modification permitted “to correct mistakes of fact, whether demonstrated by wholly new evidence, cumulative evidence, or merely further reflection on evidence initially submitted.”); Old Ben Coal Co., 292 F.3d at 546 (“neither the statute nor its interpreting case law limits the type of evidence that may justify reopening”).
In this respect, the BRB acted well outside the statutory standard of review and relied on incorrect principles of law. If the BRB had considered (as it was bound to do) all of the evidence reviewed by the *340 ALJ, it would no doubt have concluded, as Judge Smith did in dissent, that the ALJ’s findings were supported by substantial evidence. Judge Smith also noted that, as to the factual question of whether Mr. Sharpe suffered from pneumoconiosis, the BRB had previously affirmed the ALJ’s findings based on the same evidence. 2009 BRB Decision at 19 (Smith, J., dissenting). The ALJ’s determination of accuracy is thus entitled to deference on appeal and there is no basis to set it aside.
B. Futility
As the majority notes, the Director’s brief on appeal urges us to reject Westmoreland’s modification request on the grounds that it is “futile or moot.” (Br. for the Fed. Resp. at 24.) Westmoreland’s request is not futile.
As we recently explained:
The Director, as the administrator of the [Black Lung Benefits Act], is entitled to deference in his reasonable interpretation of the Act’s ambiguous provisions. See Betty B. Coal Co. v. Dir., OWCP, 194 F.3d 491, 498 (4th Cir.1999). When — as here — the Director’s position is being advanced via litigation, it is “ ‘entitled to respect’ ... but only to the extent that [it has] the ‘power to persuade[.]’ ” Christensen v. Harris County, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)).
W. Va. CWP Fund v. Stacy, 671 F.3d 378, 388 (4th Cir.2011). Simply put, the Director’s position is unpersuasive.
Although the Director proffers three rationales for its claim that Westmoreland’s claim is moot or futile, I focus only on the third — the Director’s argument that avoidance of the collateral — estoppel rule is not a type of relief provided by the modification statute. (Br. of Fed. Resp. at 23-25.)
The Director first posits that “relief from a factual finding is not a proper remedy under modification.” Id. at 23. The only support for this proposition comes from this Court’s Sharpe I decision, wherein we stated that “although administrative adjudications do not constitute Article III proceedings to which the case or controversy mandate applies, a showing of futility may be pertinent to the proper handling of a modification request.” 495 F.3d at 133 (internal citation omitted).
As the majority rightly states, ante at 329 n.9, this language should not be interpreted to compel the Director’s position on futility. In fact, other than opining that futility may be a consideration in the decision whether to reopen a benefits award, there is nothing in the language of Sharpe I that indicates that relief from a factual finding is not a proper remedy under modification.
The Director, though, cites to the modification statute for the proposition that the “relief available to Westmoreland” is limited to being able to “terminate or decrease the compensation payable to Mr. Sharpe.” (Br. of Fed. Resp. at 23-24.) The statute, however, contains no such limitation, but merely allows a finder of fact to reopen a benefits award upon, inter alia, a finding of a mistake of fact. 33 U.S.C. § 922. The Director improperly reads language into the statute, imposing a limitation not written by Congress, that a modification request must be directly tied to the payment of benefits to the miner (and conversely, cannot be related to the payment of survivor benefits derived from that miner).
When the artificial limitations suggested by the Director are not read into the statute, it becomes obvious that Westmoreland’s modification request is not futile. Especially as a consequence of this Court’s *341 decision in Collins v. Pond Creek Mining Co., 468 F.3d 213 (4th Cir.2006), Westmoreland risks the real injury of automatic payment of erroneous survivor benefits to Mrs. Sharpe if it cannot contest the factual basis for Mr. Sharpe’s living miner benefit award. In light of Pond Creek, I agree with the ALJ’s conclusion that it is “reasonable to consider both the miner’s claim and the survivor’s claim ... together when the question of ‘futility’ is considered.” 2008 ALJ Decision at 11.
Considering “futility” in this light is also consistent with rendering “justice under the act.” Pursuant to Pond Creek, Mrs. Sharpe becomes automatically eligible for survivor benefits as a consequence of the erroneous determination that Mr. Sharpe suffered from complicated pneumoconiosis. See Pond Creek, 468 F.3d at 222-23 (holding that a coal miner’s widow may use offensive nonmutual collateral estoppel to establish that her husband had developed complicated pneumoconiosis). Thus, the question of whether Mr. Sharpe suffered from complicated pneumoconiosis is inextricably intertwined with the determination of whether Mrs. Sharpe is entitled to benefits. The two claims cannot be separated as the Director urges.
The modification request was not futile.
C. Diligence
Case law has recognized that diligence is an additional factor that the ALJ may consider when weighing whether a modification request will render “justice under the act.” See Sharpe I, 495 F.3d at 134; see also McCord, 532 F.2d at 1381 (“the congressional purpose in passing the law would be thwarted by any lightly considered reopening at the behest of an employer who, right or wrong, could have presented his side of the case at the first hearing and who, if right, could have thereby saved all parties a considerable amount of expense and protracted litigation.”). That having been said, the ALJ’s findings with respect to Westmoreland’s diligence are entitled to deference and should not be disturbed. The ALJ recognized that as a matter of law, the inquiry into Westmoreland’s diligence is a limited one. Further, the ALJ did consider Westmoreland’s diligence and concluded that Mrs. Sharpe was not prejudiced by Westmoreland bringing the modification proceeding.
, While acknowledging that diligence is one possible factor to consider in the effort to effect “justice under the act,” the ALJ rightly recognized the limited role that factor plays in the analysis, especially in light of the statute’s strong preference for accuracy. In McCord, the ALJ noted, the court concluded that diligence was potentially relevant, however, it did so while noting that
[ i]t would be difficult to describe a history of greater recalcitrance, of greater callousness towards the processes of justice, and of greater self-serving ignorance, than the attitude displayed by McCord in the four-plus years from the time of Cephas’ death on January 1, 1969, to January 31, 1973, when McCord, after receiving notice of the Deputy Commissioner’s adverse award, first began to assert his defenses.
532 F.3d at 1381. There is no basis in the record upon which to claim Westmoreland’s actions in this case have any semblance to those of the employer in McCord.
In Jessee v. Dir., OWCP, 5 F.3d 723 (4th Cir.1993), we reasoned that limiting modification in the interest of finality was inconsistent with the broad discretion afforded the adjudicator of a modification proceeding. Id. at 725. Rather, we found that
the statute and regulations give the deputy commissioner the authority, for one *342 year after the final order on the claim, to simply rethink a prior finding of fact. Thus, to the extent the “principle of finality” ever applies to black lung claims, it was not triggered here, because Jessee requested modification before a year passed.
Id. The court’s discussion of finality in Jessee is pertinent to the present case because it again affirms the ALJ’s discretion to modify a benefits award within the statutory period, even on the ALJ’s own accord. The ALJ in this case understood that diligence, like finality, plays a much diminished role in black lung modification proceedings as compared to the ordinary lawsuit. See 2008 ALJ Decision at 8 n.7 (quoting Jessee, 5 F.3d at 725) (“[T]he principle of finality just does not apply to [LWHCA] and black lung claims as it does in ordinary lawsuits.”).
Consistent with our direction in Sharpe I, therefore, the ALJ conducted an analysis of Westmoreland’s motive and concluded that it did not act improperly in waiting seven years to seek modification. The ALJ recited the following “real-world facts”: “(1) Westmoreland paid [Mr. Sharpe] Black Lung benefits each month for seven years (which also benefited [Mrs. Sharpe]), (2) [Mr. Sharpe’s] estate has no assets from which Westmoreland can recoup its payments, and (3) Westmoreland had absolutely nothing to gain by waiting seven years to seek modification.” 2008 ALJ Decision at 8-9. From those facts, the ALJ concluded that Westmoreland did not lack diligence by waiting to seek modification.
The majority, however, citing to Mrs. Sharpe’s brief on appeal, criticizes the ALJ’s ruling with respect to diligence because, as a result of Westmoreland’s silence “no autopsy [of Mr. Sharpe] had ever been obtained.” See ante at 329 n.10 (citing Br. of Resp’t at 21). This assertion is the only retort to the ALJ’s decision with respect to diligence. The trouble with the majority’s assertion, however, is that whether Westmoreland had anything to gain or lose by avoiding an autopsy is completely speculative. Indeed, as discussed above, the medical evidence of record strongly indicates that Mr. Sharpe did not have black lung disease, in which ease, an autopsy would have vindicated Westmoreland’s claim that modification would be proper to correct a mistake of fact.
The ALJ was correct, therefore, to rely on the facts before it and disregard idle speculation about what might have been had an autopsy been conducted. The ALJ properly exercised its statutory discretion and reached a decision with respect to diligence that is rational and is supported by substantial evidence. The majority errs by disregarding that decision.
D. Motive
Finally, I disagree with the majority’s analysis and reliance on some speculative ill motive on the part of Westmoreland. The majority states that Westmoreland’s motive was “patently improper” because it sought to “circumvent the law,” “thwart a claimant’s good faith claim,” and “evade application of the collateral estoppel doctrine and the irrebuttable presumption of death due to pneumoconiosis.” Ante at 329.
The majority first accuses Westmoreland of attempting to “circumvent the law,” because in the ordinary case, an employer may not defend against a survivor’s claim by demonstrating that the miner did not have complicated pneumoconiosis. Ante at 328-29. In the same vein, the majority criticizes Westmoreland for its attempt to evade application of collateral estoppel and the irrebuttable presumption of death due to pneumoconiosis. Id. at 328-30. In essence, the majority con- *343 eludes that because Westmoreland is seeking to use benefit modification to resist a claim for erroneous survivor’s benefits that it could not defend against otherwise, its motives are improper as a matter of law. I disagree.
The ALJ found, with respect to Westmoreland’s motive, that it “simply used the available legal means to attempt to protect and obtain justice for itself.” 2008 ALJ Ruling at 10. Accordingly, in the ALJ’s view, “where a party’s action is not prohibited by law it should not be precluded simply because the party is motivated by self interest.” Id.
In Sharpe I, we asked the ALJ to consider Westmoreland’s motive, and once again, the ALJ faithfully carried out that responsibility. The majority’s interpretation of Westmoreland’s motive, discussed in more detail below, undermines the ALJ’s discretion and substitutes its judgment for that of the ALJ. As an appellate court, we are not permitted to reverse the ALJ simply because we would have reached a different outcome on the same facts.
The majority opinion today rewrites the statute such that modification should only be granted where doing so would not disrupt a survivor’s claim. This is a requirement not found in the text of the Black Lung Benefits Act, or any precedent, and improperly circumscribes the discretion of the ALJ to correct an erroneous decision upon a showing of a mistake of fact.
Furthermore, there would seem to be no limit to the circumstances under which a “bad motive” could be ascribed to a party seeking modification. Even during the lifetime of a black lung benefit recipient, a modification request could be barred under the majority’s logic if the factfinder concludes that the party seeking modification has an eye towards the long view, and wishes down the road to avoid a claim for survivor’s benefits. Such an outcome is not consistent with “justice under the act.”
In addition, the majority incorrectly scolds Westmoreland for seeking to “thwart a claimant’s good faith claim[.]” Ante at 329. In my view, the majority improperly conflates “good faith” with “meritorious.” In countless courtrooms and administrative proceedings every day, parties seek to “thwart” good faith claims by raising their own bona fide defenses. The law simply does not fault a party for taking a litigation position that is contra that of another party. The majority fails to recognize that Westmoreland could be (and there is no evidence to the contrary) proceeding in good faith as well. A party should not be faulted for “improper motive” where it raises a good faith defense (or, in this case, a good faith modification request), and that has the benefit of being meritorious.
IV.
For all the foregoing reasons, I would grant Westmoreland’s petition for review, thereby reversing the BRB’s order and affirming the 2008 order of the ALJ. I respectfully dissent.

. Section 22 of the LHWCA is incorporated into the Black Lung Benefits Act by 30 U.S.C. § 932(a).

. Factors other than accuracy may bear upon the determination of whether modification would render "justice under the act” even where there is a materially inaccurate factual determination. In McCord v. Cephas, 532 F.2d 1377 (D.C.Cir.1976), for example, the D.C. Circuit remanded a modification order to the ALJ to consider whether a party’s great "recalcitrance [,] ... callousness[,] ... and ... self-serving ignorance” in failing to parlicipale in administrative proceedings defeated the purposes of "justice under the act.” Id. at 1381. Importantly, the McCord court did not rule that modification was improper on those facts. Rather, recognizing the important place of the ALJ’s exercise of discretion in the statutory benefits scheme, that court remanded to the ALJ to consider, in the first instance, whether McCord’s conduct stood as a bar to modification. Id.

. As accuracy is indeed the touchstone of modification analysis, the majority could have disposed of the underlying modification request by ruling that the ALJ’s medical findings were unsupported by substantial evidence. However, the ALJ’s medical findings are firmly established as factual in nature, e.g., Harman Mining Co., 678 F.3d at 310-12 (reviewing ALJ's medical findings only to determine whether they were supported by substantial evidence), and given the exhaustive (and persuasive) review of the evidence undertaken by the ALJ, reversal on factual grounds would be a high mountain for an appellate court to climb.

. The majority candidly acknowledges that it does not undertake to balance accuracy against any other factors, noting that it "leave[s] open the question of whether such an improper motive can ever be outweighed by the strong interest in accuracy underlying the modification statute[.]” Ante at 329. Instead, the majority erroneously relies on the BRB's purported determination that "accuracy cannot offset motive and other 'justice under the act' factors here.” Id.
However, the BRB did not make that determination in its 2009 Decision. Instead, the BRB stated that,
although the Sharpe [2] court indicated that modification should be denied if the factors discussed supra show that modification would not render justice, the court also discussed another factor relevant to a determination of whether modification would render justice, i.e., accuracy. Accordingly, we will discuss the [ALJ's] determination that Judge Johnson [the prior ALJ] erred in finding complicated pneumoconiosis established in the miner’s claim.
2009 BRB Decision at 8-9. Although the BRB may have erred by characterizing accuracy as a limited factor to consider (rather than noting its primary role at the top of the "justice under the act” hierarchy), unlike the majority, it recognized that accuracy at least has a place in the discussion.